# MONTGOMERY'S EXECUTORS *vs.* KIRKSEY.

1. The relationship of all the parties to a deed of trust made by an insolvent debtor furnishes no predicate for a legal presumption or conclusion of fraud, although it is a circumstance which may go to the jury, to be considered by them, in connection with the other facts in the cause, in determining the question of fraud in fact; but if the court, in charging hypothetically upon the facts, predicates the conclusion of fraud upon the fact of such relationship, in connection with other facts which, if true, are in themselves sufficient to render the deed fraudulent in law, the charge is too favorable to the claimant under the deed, and he therefore cannot complain of it on error.

2. A deed of trust, executed by an insolvent debtor, conveying all his property in trust to secure the payment of a portion of his debts then past due, leaving other creditors unprovided for, and stipulating that the grantor should retain the possession of all the property until the law day of the deed, and for such longer period as the sale might be postponed by the secured creditors, and that the surplus after paying the secured debts and expenses should be refunded to him,—is fraudulent and void in law as against the unsecured creditors.

3. The facts that the defendant's father became the purchaser of all the property at the trustee's sale under the deed, and suffered it to go back to the defendant's possession immediately after the sale, "with permission to get a subsistence for himself and family, but to turn over all beyond this to his father, and that the property was to be under the general supervision and control of his brother as agent of his father," do not, if the deed was *bona fide*, and the purchase fairly and honestly made, justify any presumption of fraud, nor raise any question under the statute respecting three years' possession under a pretended loan. The uncertainty in the amount of compensation by way of maintenance, is a circumstance for the consideration of the jury in determining the question of fraud, which, if all the previous transactions were *bona fide*, the fact of relationship may serve to explain; and the rule which makes the retention of possession of personal property by the vendor *prima facie* evidence of fraud, does not apply to sales at public auction after notice.

4. Under the statute in relation to pretended loans of personal property, (Clay's Digest, p. 254, § 2,) three years' uninterrupted possession by the loanee is required to make the property subject to his debts: if the lender, with the view of avoiding the effect of the statute, resumes the possession before the expiration of three years, and retains it for one or two days, this cuts off the statute at that point, and the loanee's subsequent possession will date from the time when the property is restored to him.

5. Although three years' possession of slaves by the loanee makes them under this statute subject to his debts, this does not give his creditors a right to crops partly grown by them, or other products of their labor, which have not been in his possession three years,

APPEAL from the Circuit Court of Talladega.
Tried before the Hon. JOHN GILL SHORTER.

TRIAL OF THE RIGHT OF PROPERTY in thirty-three bales of cotton and other personal property, between Isaac Kirksey, plaintiff in execution, and Hugh Montgomery, claimant. The plaintiff's execution was issued on a judgment which he had recovered against William Montgomery, in the Circuit Court of Talladega, on the 7th of November, 1842, for $791, besides costs, and was levied on the property in controversy on the 19th of January, 1850 ; and the claimant, who was the father of said William Montgomery, relied on a purchase at a public sale made by the trustee in a certain deed of trust executed by said William Montgomery, which is hereinafter more particularly described.

On the trial, as appears from the claimant's bill of exceptions, the plaintiff read in evidence to the jury the execution under which the levy was made, with the endorsements thereon, " and also made out a *prima facie* case by proof of possession of the property levied on "; and the claimant then read in evidence, after proving its execution and due registration, a deed of trust from said William Montgomery to James Montgomery, dated the 11th of June, 1842, conveying to the said James, as trustee, certain real and personal property, to secure the payment of certain debts of the grantor then past due. The debts secured by this deed are the following : to Hugh Montgomery, several debts, due by promissory notes, amounting in all to about $3,500; to Andrew Cunningham, a debt of $770 ; to Cunningham & Story, a mercantile firm, a debt of about $120 ; to Daniel H. Jackson, a debt of $100 ; and to the Branch Bank at Huntsville, a balance of about $200—amounting, exclusive of interest, to nearly $5,000. The property conveyed consists of the grantor's plantation, on which he then resided, containing about two hundred acres, together with the growing crop ; also, the growing crop on fifteen acres of rented land, ten negroes, two mules, two horses, fourteen head of cattle, thirty-five hogs, fourteen sheep, a wagon and harness, farming utensils, and household and kitchen furniture. The trusts specified in the deed are as follows :

"That if, on the first day of October, 1842, all or any of said debts and liabilities shall remain due and unpaid, then, and in that event, the said James Montgomery shall proceed to sell, for cash, to the highest bidder, before the court-house door in the town of Talladega, at public auction, first giving ten days' notice of the time and place of such sale by publication in some newspaper published in this State, or by written advertisement put up at the said court-house door in the town of Talladega, all of said real and personal property, or so much thereof as may be necessary to the full and complete payment of all said debts then and thereafter remaining due and unpaid; and the proceeds of said sale are to be applied by said James Montgomery to the payment of said debts; and if the said property should be insufficient to pay all of said debts, then the said proceeds are to be applied to the payment of said debts in proportion to their several amounts, and the excess, if any, after paying all necessary expenses upon the execution of this deed of trust, to be paid over to said William Montgomery, or his representatives. And it is also expressly understood and agreed, that all of said property, both real and personal, is to remain in the possession of said William Montgomery until the day of sale. And it is further understood and agreed, that, if the parties for whose benefit this deed is made shall think proper to postpone the sale of said property beyond the time hereinbefore mentioned, they shall have full power to postpone and delay the sale to such time as they may think proper; in which event, the said property is still to remain in the possession of said William Montgomery (but the said James Montgomery is to be fully entitled to the growing crops) until the sale shall be made by order of the said parties for whose benefit this deed is made."

"The claimant then proved, that on the 14th of April, 1843, after notice in writing of the time and place of sale in accordance with the terms of said deed, the property therein named was put up at public sale at the court-house door in the town of Talladega, and sold to the highest bidder for cash. There was evidence, offered by plaintiff in execution, tending to show that said sale, and the purchase made under it, were fraudulent; but there was also evidence, offered by the claimant, tending to show that the sale and purchase were fair and

*bona fide.* At this sale Hugh Montgomery, the father of said William Montgomery, became the purchaser of all said property. After said sale, the property was carried back to the residence of William Montgomery, and remained in his possession (except as hereinafter stated) up to the time of the levy. The claimant offered evidence, also, tending to show that the debts named in said deed of trust were *bona fide ;* and plaintiff offered evidence tending to show that they were not. The evidence tended to show, also, that the debts named in said deed were all the debts the said William Montgomery owed, except the debt due to plaintiff in execution, and a security debt of about $1,500 which he owed to the Branch Bank at Decatur, which his co-surety afterwards paid; and that the sureties of the debt to the Huntsville Bank, mentioned in said deed of trust, were near relations of said William Montgomery.

"The plaintiff's execution in this case is founded on a judgment obtained on a note given by said William Montgomery for land sold by said plaintiff in execution (Isaac Kirksey) to him. The said land, being bound for the said purchase money at the time the deed was executed, was afterwards sold by said plaintiff in execution, under a decree, obtained on a bill filed by him for that purpose, to sell said land for the payment of the purchase money ; and at the sale under said decree James Montgomery became the purchaser. This is the same land contained in the deed of trust, and was sold under said deed, and purchased by Hugh Montgomery, before Kirksey filed his bill to assert this lien.

"The evidence conduced to show, also, that the property sold under said deed was returned by said Hugh Montgomery to the possession of said William Montgomery, with permission to get a subsistence for himself and family, but to turn over to him all beyond this ; and that the property was to be under the general supervision and control of James Montgomery, as the agent of said Hugh. The claimant offered evidence, further tending to show that the property was thus held by William Montgomery from the time of the sale up to the date of the levy. It tended to show, also, that William Montgomery never claimed the property as his own after the sale in April, 1843, but acknowledged it to be the property of the

claimant, Hugh Montgomery ; that James Montgomery, as agent for said Hugh, had taken the slaves out of said William's possession, without consulting him, at intervals of less than three years from the time of the sale, up to the time of the levy, and retained possession of them for a day or two at a time, controlling them as the property of said Hugh. The evidence conduced to show, also, that said James took possession of said slaves, as agent as aforesaid, for the purpose of avoiding the statute of three years' possession. The evidence also further tended to show, that said James, as agent as aforesaid, controlled the cotton crops, selling them, and receiving the money for them, but that William used and disposed of all the other crops raised on the place ; and it was further shown, that William and James Montgomery occupied different farms.

" On the other hand, the plaintiff in execution offered evidence, tending to show that William Montgomery controlled this slave property and other property in all respects as his own, from the date of the deed up to the date of the levy ; and that when the property was taken out of his possession by James Montgomery, as aforesaid. it was returned to him again without any new understanding or agreement with him; that it went back to his possession immediately after the sale in April, 1843, and (with the exception of the times when the property was taken from his possession to avoid the statute, as aforesaid) had remained in his possession ever since, and had been under his exclusive management.

" The evidence further tended to show, that shortly after the sale in April, 1843, William Montgomery left the land on which he resided at that time, and for which he had given plaintiff the note on which this judgment and execution were obtained, and went to live on land purchased for him by said James, as agent as aforesaid for said Hugh, and paid for by him, as such agent, out of the proceeds of crops raised by the labor of said slaves. The cotton levied on was the crop made by said slaves on the land thus purchased by said James, as agent as aforesaid, during the year preceding the levy. The evidence conduced to show, also, that all James Montgomery had done in reference to the property he did as agent for Hugh Montgomery, and by his consent, and under his instructions.

"Upon this state of facts, the court charged the jury—

"1. That the deed of trust, made by William Montgomery to James Montgomery was not fraudulent upon its face ; but, if all the parties to the deed were related to each other, and there were other creditors of William Montgomery than those named in the deed at the time of its execution, and this was known to all the parties who were provided for by said deed, and all the property which William Montgomery owned was included in said deed,—that then said' deed was fraudulent and void as to such excluded creditor.

"2. That if they believed that the negroes named in said deed, after the purchase by Hugh Montgomery, were permitted by him to remain in the possession of said William Montgomery under a loan, without deed or writing recorded, for three years previous to the levy, and that the cotton levied on was produced by the labor of the negroes on the plantation occupied by William Montgomery, then the cotton levied on would be subject to plaintiff's execution, although James Montgomery, as the agent of said Hugh, had taken said negroes into his possession, for a ,day or two at a time, at intervals of less than three years, if they believed that such possession was had by arrangement or collusion with William Montgomery, with a view to prevent the operation of the statute of three years.

"The claimant asked the court to charge the jury—

"1. That if they believed the property was purchased by Hugh Montgomery in good faith at said trust sale, and was carried to the premises of Hugh or James Montgomery ; and that William Montgomery was suffered to live upon said premises, and to use the property purchased so as to obtain a subsistence for his family out of the same, and was bound to account to Hugh Montgomery, or his agent, for the surplus, and did so account ; and that the place was under the supervision of James Montgomery, as agent for said Hugh,—then the statute respecting pretended loans did not apply. This charge was given, with the qualification, if William Montgomery and family resided on the same farm with James or Hugh Montgomery ; but, if he and his family cultivated and lived upon a separate farm, then the statute would apply.

"2. That if they believed the cotton levied on was the joint

product of the land of James Montgomery and the negroes purchased under said deed of trust by Hugh Montgomery, and that the cotton had not been in the possession of William Montgomery for three years at the time of the levy, then it was not subject to plaintiff's execution under the statute of three years.

" The court refused each one of the charges as asked ; and to each refusal, as also to the charges given, the claimant separately excepted."

The charges given, and the refusals to charge as requested, are now assigned for error.

WHITE & PARSONS, for the appellants :

1. The deed of trust from William to James Montgomery is not fraudulent on its face. The provision that the sale may be postponed by the parties for whose benefit the deed was made does not, as the appellee's counsel insists, render it fraudulent. This court has decided, that where it cannot clearly see that a deed is fraudulent on its face, the question of intent must be submitted to the jury in connection with all the other facts and circumstances.—Johnson v. Thweat, 18 Ala. 741 ; Elmes v. Sutherland, 7 ib. 262 ; 8 ib. 106 ; also, 2 Metcalf's R. 99. There is nothing on the face of the deed to show that the grantor was insolvent, or in failing circumstances ; and the fact that perishable articles are conveyed by it, with a reservation of the use to the debtor, does not alter it. The reservation of the use to the grantor until the law day of the deed, is nothing more than the law would have given him without any express reservation in the deed. Dubose v. Dubose, 7 Ala.; Elmes v. Sutherland, *supra*. The grantor only retained the right of possession until the sale, and whatever surplus (if any) might remain after satisfying the secured debts and the expenses of the trust ; and these were open to his creditors. That his possessory interest might be sold, see Williams v. Jones, 2 Ala. 314 ; Planters & Merchants' Bank v. Willis, 5 ib. 771 ; Magee v. Carpenter, 4 ib. 469. There is nothing in the terms of the deed inconsistent with good faith, and it does not necessarily hinder or delay creditors. If the trustee were to refuse to act promptly, or within a reasonable time, he might be compelled to do so in

Montgomery's Executors v. Kirksey.

equity.—Evans v. Lamar, 21 Ala. 336.   It will be time enough
to cry fraud, when the creditors attempt to postpone the sale
in such a manner as to hinder or delay the unsecured credi-
tors.   It will be observed, that the deed only provides that
the secured creditors *may* postpone the sale, &c.   Now, unless
this power was actually exercised in a fraudulent manner,
how can it be said that the deed hindered the other creditors ?
But it will be seen from the evidence, that the sale took place
in April, 1843, and therefore no fraudulent use was made of
the deed.—Jones v. Williams, 2 Ala. 314 ;  Anderson v. Hooks,
9 *ib.* 704 ;  4 *ib.* 379 ;  9 Porter 566.   As to the right of the
unsecured creditors to have the trust closed, and the surplus
paid over to them, see Dubose v. Dubose, 7 Ala. 235 ;  Pope
v. Wilson, *ib.* 690 ;  Graham v. Lockhart, 8 *ib.* 9.   Again ;
the grantee must participate in the fraudulent intent on the
part of the grantor, if there was one, to invalidate the deed.
Hooks v. Anderson, *supra.*   And the embarrassment of the
debtor, his relationship to the creditor, nearness of residence,
&c., are not sufficient to warrant the inference of fraud,
because all this may be consistent with good faith.—7 Ala.
142 ;  9 *ib.* 704 ;  Garland v. Chambers, 11 S. & M. 337.

2. There was no evidence going to show that all the parties
to the deed of trust were related to each other ;  and therefore
the first charge is erroneous.   That charge withdrew from
the jury the consideration of the *bona fides* of the grantor and
the other parties to the deed, and made the whole question
turn on the relationship of the secured creditors to the grantor
and their knowledge that he had other creditors unsecured by
the deed, and that all his property was conveyed by the deed.
All these facts might consist with good faith and fair inten-
tion.—Stokes v. Jones, 21 Ala. 731 ;  Bank v. Taylor, *ib.* 582 ;
Bank v. Lanier, 18 *ib.* 629 ;  17 *ib.* 611 ;  9 *ib.* 944 ;  18 *ib.* 745 ;
7 *ib.* 142 ;  9 *ib.* 712.

3. The error of the second charge is apparent :  the statute
requires an uninterrupted possession of three years, while the
charge says this is not necessary.—Stubblefield v. Oden, 9
Ala. 651 ;  Brainard v. McDevitt, 21 *ib.* 124.   If an interval
of a day or two may be disregarded, what is there to prevent
a greater interval from being disregarded ?   The letter of
the statute, where the plaintiff's title depends upon it, must

be followed. By the return of the negroes to the possession of their owner, the right of the loanee and those claiming under him was gone ; and upon their return, the statute began to operate anew. As between the lender and loanee, property held under a gratuitous loan remains the property of the original owner, although it may have been in the possession of the loanee for more than three years. After the expiration of the three years it is subject to the loanee's debts, and the creditor's right attaches to it, provided he has acquired a lien by placing his execution in the sheriff's hands while it is yet in the possession of the loanee ; but if the lender has resumed the possession before the lien has attached, the property is no longer subject to the demand of the loanee's creditor. Maull v. Hays, 12 Ala. 500 ; McCoy v. Odom, 20 ib. 502 ; Knight v. Bell, 22 ib. 198 ; 10 Leigh's R. 5.

4. The case hypothetically stated in the first charge asked by the claimant, does not make the relation of lender and loanee under the statute of frauds, but only a permissive occupation of the premises and use of the slaves, coupled with an interest in the family of the defendant, and an accountability to the agent of Hugh Montgomery for the proceeds of the labor of the slaves and products of the farm, with a superintendence over the whole by that agent.—Johnson v. Branch Bank at Montgomery, 7 Ala. 379 ; State Bank v. Croft, 6 ib. 622.

5. The cotton was grown, on the land which Hugh Montgomery had purchased, by the labor of the slaves. There is no pretence for saying that the statute of three years' possession applied to it, unless the fact of its being the product of their labor is sufficient. The evidence does not show that the slaves had been in the possession of the defendant in execution for three years at the time the cotton was produced ; and if not, then both the slaves and the cotton were the property of the claimant, and not subject to defendant's debts. To sustain this charge of the court, it must be assumed that the cotton was liable to the payment of the debt, not because it was the product of the labor of slaves who were at that time liable to the execution, but because they afterwards became so. Branch Bank at Mobile v. Ford, 13 Ala. 431 ; 5 ib. 744.

JOHN T. MORGAN, *contra :*

I. The deed of trust devotes the whole of the grantor's property, real and personal, to the payment of the debts to his relations. The grantor was insolvent, and owing debts to a large amount not secured in the deed. The debts secured by the deed are all past due ; the law day of the deed is postponed for five months after the execution of the deed, and the deed contains a provision that all the property, real and personal, is to remain in the possession of the grantor until the day of sale ; and if " the parties for whose benefit the deed is made *shall think proper to postpone the sale,* beyond the time specified, they shall have full power to postpone and delay the sale *to such time as they may think proper ;* in which event, the property is still to remain in the possession of the grantor, until the sale shall be made by the order of the parties for whose benefit this deed is made ; but the said James Montgomery is to be fully entitled to the " *growing crops*". All these facts were known to all the parties when the deed was executed. These facts, if they were all distinctly incorporated in the deed, would make it fraudulent upon its face.

1. Because the deed, not being a deed of assignment, (by which all the creditors of the grantor are secured an interest in all of his property,) does not in good faith devote the property conveyed, (being all that he had of every description,) to the payment of the preferred creditors, but reserves the possession to himself, and puts it in the power of his relatives and preferred creditors to continue that possession in him so long as they may choose ; and in the meantime to take *the benefit of the crops to himself,* except the " *growing crop*" which had already been specified in the deed, and which means *the crops then* growing. This is a stipulation of the deed, and it will not do to say that the parties benefited by the deed may order a sale of the property conveyed very soon. Suppose they do not ; if the grantor has *the right* to incorporate such a provision in the deed, and if it is not inconsistent with honesty of intention to do so, the parties benefited may keep him in possession for twenty years, consistently with the provisions of the deed, and keep off the creditors not embraced in the deed. Such a provision in the deed of an insolvent man, or one in failing circumstances, is utterly inconsistent

with any sound ideas of honesty.—Gazzam v. Poynts, 4 Ala. 382 ; Hindman v. Dill, 11 *ib.* 689 ; Grimshaw v. Walker, 12 *ib.* 102 ; Planters & Mer. Bank v. Clarke, 7 *ib.* 770 ; Wiswall v. Ticknor & Day, 6 *ib.* 178 ; Bullard v. Hazzard, 1 Porter 139 ; Rugely v. Harrison, 10 Ala. 731 ; Pearson v. Moreland, 7 S. & M. 609 ; Cummings & Cooper v. McCollough, 5 Ala. 324 ; Herrin v. Morford, 9 Dana, 450.

2. The reservation of the right of possession of perishable property (such as cattle on a farm, grain, growing crops, and all household furniture, sheep and hogs, upon a plantation,) is equivalent to a reservation *of the use of that property*, when it appears *that it is all the man has to live upon ;* can it be intended to support the *bona fides* of such a reservation, that the grantor was willing to starve himself in order to give a preference to creditors ? There is no stipulation in this deed, that the possession of the grantor of the property is for the benefit of the trust fund ; and if there was such a stipulation, it would read strangely in connection with the other recitals, which the judge's charge incorporates into it, viz., the grantor is insolvent ; owes other debts ; conveys all his property ; and all the beneficiaries of the deed are his relations. Could he have retained the possession for the sole and pure purpose of making the trust estate secure the debts ?—Johnson v. Thweat, 18 Ala. 741 ; Somerville v. Horton, 4 Yerger 550, cited in Ravisies v. Alston, 5 Ala. 302.

3. But, if it is understood that the deed conveys the crops then growing, and to be grown during the period that the beneficiaries might allow the grantor to remain in possession, and that it was one of the purposes of the deed that these crops should be applied to the payment of the debts ; this view of the case does not relieve the deed from its fraudulent character. A debtor has no right to tie up property in the hands of a trustee, until the rents and profits may discharge the debt.—Cases cited *supra*, and Vernon v. Martin & Smith, 8 Dana 263.

4. All that was wanting to make the deed fraudulent upon its face, was for it to have shown that William Montgomery was insolvent, and had conveyed all his property in the deed, and owed other debts at the time the deed was made, not provided for in the deed. These facts being shown, admitted

of no explantion, and it was the duty of the court to pronounce the judgment of the law upon the case.

5. West, Oliver & Co. v. Snodgrass, 17 Ala. 549, shows the limit to which our court will go, in support of the assignments of insolvent debtors.

6. The degree or character of fraud, which would authorize a court, upon the facts stated on the face of the deed, to declare it void, need not be different, or stronger, than that which would authorize a jury to find the fraud, upon the same state of facts, not embraced in a deed. The court must construe every deed, if called upon, either by its four-corners, or in connection with facts in proof; and in this discharge of duty, the court will look to all the facts, and decide each case upon its own features.—Johnson v. Thweat, *supra*. The evidence need not be sufficient to exclude a doubt, but only to raise a presumption of fraud.—Borland v. Walker, 7 Ala. 269; Petrie's Ex'r v. Wright, 6 S. & M. 647; Swift v. Fitzhugh, 9 Port. 39.

II. The second charge given affirms that if the cotton was produced by negroes *loaned* by Hugh to William Montgomery, upon land in the possession of William Montgomery, it was subject to the execution. This is a correct proposition, for if the negroes *were loaned to William Montgomery*, he could certainly enjoy the benefit of their labor, and it was of no consequence how often, or when they went back into the possession of the bailor. But the other propositions contained in the charge are correct, if they are in condition to be considered.

1. If there was a loan, and a possession under that loan for three years, without deed recorded, &c. The mere fact that *the possession was taken*, by the agent of the bailor, *for a day or two at a time, at intervals of less* than three years, cannot defeat the operation of the statute. Such an agent might take the possession, *at such intervals*, and keep it for that length of time very consistently with the right of the bailee to hold it under the original loan. And besides, the attempt to defeat the statute by a collusive change of the possession is not the prosecution of the claim by due course of law, but is only an addition of actual fraud to the constructive fraud which the statute attempts to guard the community against.

McLaughlin's Adm'r v. Daniel, 8 Dana 187, 189; Gressett v. Agee & Dumas, 14 Ala. 355 ; Myers v. Peck, 2 *ib.* 638. The original loan would not be determined between the original bailor and bailee, upon a mere collusive change of the possession back and forth between them.—Stephens v. Barnett, 7 Dana 259.

2. The possession of a loanee, under the first charge asked, would have been sufficient under the statute of frauds, for the possession of his family is his own possession.—McCoy v. Odom, 20 Ala. 502. The farm was in the separate possession of the loanee. The charge is silent as to whether he accounted for the surplus proceeds of the farm annually, or at what intervals.—Myers v. Peck, cited *supra.*

III. The second charge asked was properly refused. It called upon the court to say that the purchase of the negroes under the deed of trust, conferred the title upon Hugh Montgomery, or James Montgomery, without respect to the questions of fraud raised in the case. It further called upon the court to decide that the statute of frauds could not affect the title to cotton raised by negroes, if the negroes "*were purchased under the said deed of trust*", and was raised on James Montgomery's land. What deed of trust is "*said deed of trust*"?

CHILTON, C. J.—1. As to the first charge : We may leave out of view the relationship of the parties, as constituting one of the conditions upon which the judge predicated the conclusion of fraud, in this charge; for, if this was an error, it was favorable to the appellants, requiring the jury to find that all the parties to the deed were related, when, in our opinion, aside from the relationship of the parties, if the jury found the other facts hypothetically stated in the charge to exist, they might well have been instructed to find the deed fraudulent. The relationship of the parties, upon a question of fraud in fact, was a circumstance which might properly enough go to the jury to be considered by them, in connection with the other facts in the cause, in ascertaining the *quo animo* the deed was made ; but it furnishes no predicate for a legal presumption or conclusion.

The charge, stripped of this superfluous matter, presents

the question, whether a deed, made by an insolvent, of all his property, to a trustee, in trust for the payment of some of his debts, leaving other debts unprovided for, and containing stipulations beneficial to the grantor—namely, that he should retain the property, the use of which is valuable, for several months until the law-day, and for such longer period as the parties secured may postpone the sale ; and that the surplus, after satisfying the secured debts and the expenses, should be refunded to the grantor—is not, as a conclusion of law, fraudulent and void, if these facts were known to the parties to it? We do not hesitate to say, that had all these facts appeared upon the face of the deed, or been returned by a special verdict of a jury, we should feel constrained to hold, irrespective of the intention of the parties, that the deed was fraudulent and void in law as against the creditors not provided for. It is not permissible for any one thus to avail himself of a part of his indebtedness to tie up all his property and exempt it from liability for his other debts, while he has the temporary benefit of the use of it and a contingent residuum. Such assignments, when these facts appeared on their face, have uniformly been declared fraudulent in law. That the facts do not appear on their face, only puts the party upon whom the burden of proving fraud is devolved to the necessity of otherwise establishing their existence, and of showing that the beneficiaries were cognizant of them. Several adjudged cases of this court show that such deeds cannot be upheld.—Gazzam v. Poyntz, 4 Ala. 382; Hindman v. Dill, 11 *ib.* 689; 7 *ib.* 770; 6 *ib.* 178; 12 *ib.* 102 ; 5 *ib.* 324 ; 10 *ib.* 731.

There was, therefore, no error in the first charge given by the court, of which the appellants could complain.

As to the second charge : We are not at all sure that it was warranted by the proof disclosed by the bill of exceptions. It is said, the proof tended to show that the property, after the sale under the deed of trust, and the purchase by Hugh Montgomery, went back to the possession of William Montgomery, " with the permission for him to get a subsistence for himself and family, but to turn over to Hugh Montgomery all beyond this ; and that the property was to be under the general supervision and control of James Montgomery, as the agent of Hugh." There was other evidence,

tending to prove that William Montgomery, from the date of the deed until the time of the levy, controlled the property in all respects as his own ; that it had been taken into possession of James Montgomery for a short time—a day or two— before the expiration of three years, for the purpose of avoiding the three years' statute as to loans the evidence of which is not recorded, but was returned to William Montgomery without making any new arrangement, and had been under his exclusive management and in his possession ever since. The proof conduced to show, that the cotton which was the subject of controversy was raised by these slaves, on land purchased by James Montgomery, as agent of Hugh Montgomery, and paid for by him out of cotton crops raised by the slaves. Such being the proof, when stated in the strongest light for the appellee, we are much inclined to doubt whether it raises any question as to the three years' possession under a pretended loan. If the deed was *bona fide*, and the purchase by Hugh Montgomery of the slaves and other property was fairly and honestly made, he had as much right to contract with his son, the defendant in the execution, to take possession of the property and work it on land which he would purchase, retaining a subsistence for himself and family as a compensation for his care and trouble, as he had to employ an overseer in the same way, or for a stated compensation. The uncertainty as to the amount of the compensation by way of maintenance, is a circumstance to which the jury may look in determining whether this was not a part of a scheme designed to secure the property to the son, to the exclusion of his creditors ; but, if all the previous transactions by which Hugh Montgomery acquired the property are *bona fide*, the fact of relationship may serve to explain why the same degree of particularity as to compensation was not observed as would be likely to have obtained had the father dealt with a stranger.

Neither can any presumption of fraud be predicated upon the isolated fact, that the property went back into the possession of William Montgomery immediately after the sale. The rule which makes the retention of personal property by the vendor *prima facie* evidence of fraud, does not apply to sales made at public auction after notice, as in this case. If,

then, there was an agreement that William should retain the slaves and farm of Hugh, and deliver over the proceeds to the agent of Hugh, which might remain after deducting a subsistence for himself and family, and there was no fraud in the acquisition of the property in Hugh, the statute above alluded to respecting possessions under loans for three years has nothing to do with the case.

But, conceding that the facts brought the property into that category, we are still of opinion, the second charge was erroneous, as to the alleged interruptions of the possession by Hugh Montgomery, through his authorized agent, taking possession before the expiration at any time of three years' continuous possession.

The object of the statute doubtless was, to prevent persons from obtaining collusive credit, or lulling their existing creditors into false security, by the possession of property apparently their own, and upon the faith of the liability of which, from long continued possession, to the satisfaction of the possessor's engagements, his creditors may well be deemed to have reposed. An *actual, bona fide change* of the possession, before the expiration of the three years, cuts off the statute at this point, and the loanee's subsequent possession as to its duration must date from the time the property is returned to him. Nor is it material that this change was designed to avoid the effect of the statute. The owner had a right to avoid it, and by an open, ostensible act, retake his property and resume his dominion and control over it. Nor has the law fixed upon any specific period of time which the owner must retain the possession before its return, in order to constitute it such an interruption of the possession as shall preclude the operation of the statute. A mere constructive possession will not suffice; *that* the owner has all the while, and it is what the statute strikes at when it is opposed to the claims of the *actual* possessor's creditors. Nor will we say that a momentary interruption will suffice; but, if the possession be actually and *bona fide* changed for a day, or two days, we see no reason why such change should not be as available as one month, or one year. The charge assumes, that if the change of possession was by an *arrangement* between the parties, or collusive, &c. Now the parties might honestly have

Montgomery's Executors v. Kirksey.

so arranged, without any intention of deluding or defrauding creditors or purchasers; and if it was *bona fide*, it could not affect the rights of the lender.

From these considerations, we are of opinion, the second charge was erroneous,—that the first charge asked by the appellant should have been given as asked, and that the qualification superadded by the court was erroneous; for, in our view, it was wholly immaterial, (conceding the facts stated in this charge to be true, and the validity of the trust deed,) whether William lived on the same farm with Hugh or James Montgomery, or lived upon and cultivated a place separated from theirs.

The second charge prayed for by the appellant should have been given. It by no means follows, because the law says, that if William Montgomery has retained possession of the slaves for more than three years on a pretended loan, these slaves shall be liable to his debts, that other property belonging to him, the product of the labor of the slaves, but which has not been in his possession three years, shall be liable. The property is separate and distinct. There is no such necessary connection between the slaves and the cotton which their labor has contributed in part to produce, as that the one must occupy the condition of the other. As between the loanee and the actual possessor, the property belongs to the former, notwithstanding three years have elapsed without claim made, &c., as required by the statute. Its produce may, by the agreement of the parties, occupy the same *status*. The creditor's right is, to subject the property which has remained with his debtor for three years; and if he chooses to pass by that, and levy upon other property which has not been held for this period, we know of no principle which authorizes him to transfer his lien in this way, upon the idea that property which he might have subjected contributed to produce that levied upon.

For the error we have mentioned, the judgment of the Circuit Court must be reversed, and the cause remanded.

RICE, J., did not sit in this case, having been of counsel before his election to the bench.