## MERRILL v. LOCKE.

The plaintiff claimed title to certain real estate, by virtue of a levy on an execution in his favor against one H. The defendant claimed title under a deed from H. to one S. It appearing that H. was in failing circumstances at the time of the attachment made by the plaintiff, and at the delivery of the deed, it was *held* that the burden of proof was upon the defendant, to show that the deed was made in good faith and for an adequate consideration, and that certain notes, surrendered as a part of the consideration, were genuine, and what they purported to be.

THIS was an issue between John J. Morrill and Arthur C. Locke, sent down from the law term on a petition for

partition, the plaintiff claiming one undivided fourth part of the premises from one Tenney Hibbard, his debtor, by virtue of a set-off on execution, and that the sale thereof by Hibbard, under which the defendant claims to hold the premises, was a fraud upon his creditors. Upon the trial, the plaintiff gave in evidence a writ of attachment in his favor against Hibbard, dated November 16, 1853, founded on Hibbard's promissory note and account, both due the plaintiff prior to September 29, 1853, upon which writ all the right and interest of said Hibbard in the premises was attached on the day of the date. It was admitted that this debt was due to the plaintiff from said Hibbard, and that judgment was rendered thereon at the February term, 1855, whereon execution issued February 24, 1855, which was levied upon the fourth part of the premises, the same being set off in full satisfaction of the execution.

The defendant claimed title under a warrantee deed from George W. Sanders, to the defendant, and one John H. Maxfield, dated January 30, 1855; and a deed from Maxfield, of his interest, dated May 19, 1855; and a warrantee deed from Hibbard and wife to Sanders, dated September 29, 1853, in which the occupancy of said premises was reserved by Hibbard till the first day of January, then next. The consideration mentioned in the last mentioned deed was $1,500. The defendant offered as a witness Joseph K. Woodman, who testified that on the day the deed from Hibbard to Sanders was given, Hibbard and Sanders came to his house; that the deed was brought there, executed, and was there delivered to Sanders; that Sanders then paid to Hibbard $600 in money, and the balance in notes against Hibbard, and purporting to be signed by him; that they amounted to $1,400 or $1,500, with the money, he was not positive which, but thought about $1,400; that the bodies of said notes were in the hand-writing of said Sanders, except one, the Hoit note, for $50; that there were several of the notes bearing different dates, and that one

of them, a small note of $5 or $10, was an old note in date, and had the appearance of being considerably worn; and that he assisted Hibbard, at his request, in counting the money and computing the amount of the notes. Upon cross-examination, the witness stated that he married the mother of Sanders, and that Hibbard married a sister of Sanders; that he went with Sanders the day previous to James Hoit's, where Sanders hired $600. Hoit asked Sanders what he was going to do with the money. Sanders said he had bought Hibbard's brick house (the premises in controversy). Hoit said he had a note against Hibbard for $50, which he must take if he had the money. Sanders said Hibbard would pay it, but Hoit insisted, and Sanders took the note, and gave his note for that and the money; and this Hoit note was one of those given up to Hibbard by Sanders the next day. The witness stated that Hibbard was not then in failing circumstances, to his knowledge, but that afterward Hibbard told him that he was in failing circumstances. It was admitted that the defendant and Maxfield paid the amount specified in the deed from Sanders to them, as the consideration, *bonâ fide*, nor was the payment of the consideration in the deed, Maxfield to the defendant, questioned. It appeared that Hibbard occupied the premises in question until about a week before the date of the deed from Sanders to the defendant and Maxfield.

The parties agreed that upon this evidence, and for the purpose of raising the questions of law, the court should order a verdict *pro forma*. Whereupon the court ordered a verdict for the defendant, upon which judgment was to be entered, or the same to be set aside and a new trial granted.

*Stevens & Vaughan*, for the plaintiff, relied upon the following authorities in support of the petition; *Kimball* v. *Fenner*, 12 N. H. 248; *Giddings* v. *Coleman*, 12 N. H. 153;

*Langley* v. *Berry,* 14 N. H. 84; *Belknap* v. *Wendell,* 21 N. H. 175; Twyne's case, 1 Smith L. C. 33; *Coburn* v. *Pickering,* 3 N. H. 415; *Stone* v. *Grantham,* Bac. Abr., Fraud, 608.

*Whipple* and *Hibbard,* for the petitioner, cited *Coburn* v. *Odell,* 30 N. H. 552, and commented on cases referred to by the plaintiff's counsel.

NESMITH, J. The plaintiff claims partition in certain premises once admitted to be the property of Tenney Hibbard, and derives his title by virtue of a set-off upon execution, founded on a judgment rendered February term, 1855. It is agreed that said judgment was founded upon a just debt due to the plaintiff at the time a writ of attachment issued thereon, and the attachment made November 16, 1853, and that said debt had been contracted prior to September 29, 1853. It is also admitted that the levy of said execution was duly made upon one fourth part of the premises in dispute. The petitionee claims title to the same premises by virtue of a deed of warranty, dated September 29, 1853, from said Hibbard and wife to George W. Sanders, in which said deed possession of the premises was reserved to the grantor up to January 1, 1854, and the consideration mentioned therein was stated at $1,500. The defendant derives title also from said Sanders to himself and one John H. Maxfield, by deed dated January 30, 1855, and also by deed from said Maxfield of his interest, dated May 19, 1855. The petitioner claims that the deed from Hibbard to Sanders was a fraud upon his creditors, and alleges, first, that possession of the premises conveyed remained in the grantor, by the terms of the deed, and after its delivery. Possession of real estate being retained by the vendor after a sale, is not *per se* a fraud, but, in the language of Lord *Mansfield,* being only evidence of fraud, may be explained. 1 Burr. 454. If the act of possession were not of an ambiguous character, fraud might be in-

ferred from it by the court; but, appearing in so questionable a shape as it often does, fraud, if accompanying it, is a presumption to be made by the jury from the whole case, and is not determinable by any positive rule of law. Phill. Ev., Appendix 15. The length of time the estate is left or reserved, whether for months or years, would frequently much strengthen or weaken any presumption of fraud. Possession by the vendor or grantor is not conclusive evidence of fraud, and may be rebutted or explained. *Haven* v. *Low*, 2 N. H. 16; *Seavey* v. *Dearborn*, 19 N. H. 35. As a general principle, fraud is a question of fact, or a mixed question of law and fact, where the court may decide what circumstances and interests are competent to prove it. *Blodgett* v. *Webster*, 24 N. H. 92; *Brooks* v. *Powers*, 15 Mass. 244; *Fletcher* v. *Willard*, 14 Pick. 466. Again, it is alleged that this contract or conveyance was made when Hibbard was in failing circumstances, and that the parties to the deed were related by marriage. The deed was executed near to the time of the attachment. One of the marked circumstances of Twyne's case, decided in the Star Chamber in the forty-fourth year of Elizabeth, was, that the "transfer was made pending the writ," and thereby tended to induce suspicion that the conveyance was made to secure the property from attachment, and to "hinder, delay, or defraud the creditor." The effect of indebtedness as making a conveyance fraudulent, and the general character of such contracts made for the benefit of relatives, are well considered, and the modern authorities referred to, in Hilliard on Sales (pages 351, 352). A heavy indebtedness of the grantor, and a sale to a relative, united, form strong badges or indications of collusion and fraud, but are not, in themselves, unsupported by other material facts, deemed conclusive proof of fraud.

The fact that all the parties to a deed are related, furnishes no predicate for a legal presumption or conclusion of fraud, but is a circumstance which may go to the jury

to be considered by them, in connection with the other facts of the case, in determining the question of fraud in fact. 26 Ala. 172. But, in general, these indications are weakened, and in many instances entirely overcome, by the evidence of a full consideration paid; and in this case the petitioner urges the objection that although the deed in question may show on the face of it the acknowledgment of a good pecuniary consideration received by Hibbard, yet, as against existing creditors, the petitionee was bound to show that the conveyance was made in good faith, and executed upon a sufficient consideration, or, in other words, the actual payment of the money, or other thing mentioned as the consideration, must be proved by him who holds the conveyance. At the time of the conveyance from Hibbard to Sanders, the petitioner occupied the position of a creditor to Hibbard. The petitionee now represents the title of Sanders, and nothing more. He has taken his title with legal notice of the incumbrance upon it, created by the attachment and levy of the execution of Morrill, the creditor of Hibbard. The burden of proof is then cast upon Locke, to show that the conveyance, Hibbard to Sanders, was not a mere voluntary conveyance, therefore fraudulent as against the creditors of Hibbard, but that it was founded on a good *bonâ fide* consideration, which was paid, or agreed to be paid, by the grantee, and received by the grantor, and that the promissory notes of Hibbard to Sanders, which constituted the larger part of said consideration in said deed mentioned, were genuine, due, and owing at the time they were surrendered up by Sanders upon the execution of the conveyance, and that there was no such secret trust, or reservation of any future advantage to the grantor, intended by the parties to the deed, as would tend to make it fraudulent. The question whether a trust existed here, may be for the jury, but when admitted, or proved, the inference from it is one of law, which the court is bound to make. But it is suggested that a money con-

sideration is proved in this case, amounting to $550. Is it a valuable one? and does the amount proved to have been paid comport with the spirit or intent of the contract? Thus, if one, being indebted, conveys all his goods to his son or cousin in consideration of natural affection, this is void against creditors, because the consideration is not a valuable one; and, as the claim hereby defeated is valuable, equity requires that the conveyance which defeats such claim should be based on equally as high and good a consideration; and such consideration should be actually proved by the petitionee in this case, and the genuineness of the consideration supported by adequate proof; *Kimball* v. *Fenner,* 12 N. H. 248; *Langley* v. *Berry,* 14 N. H. 84; *Belknap* v. *Wendell,* 21 N. H. 175; Hill. on Sales 340; *Clapp* v. *Tirrell,* 20 Pick. 247; and to enable him to do it, our opinion is that the verdict ordered in this case should be set aside, and

*A new trial granted.*