# Harrell *et al. v.* Mitchell.

*Bill in Equity to set aside Fraudulent Conveyance.*

1. *Reexamination of witness; when not allowed.*—The reexamination of a witness after hearing and final decree, for the purpose of altering or correcting his testimony, as to a matter discussed in court and judicially weighed, opens a wide door for fraud and perjury, and ought not to be tolerated.

2. *Fraudulent conveyance; what admissible to show.*—Where the grantor's creditors assail his conveyance for fraud, the fact that at the time of the sale suits were pending against him, or that he apprehended suits, and other evidence of his general pecuniary condition, is admissible.

[Harrell v. Mitchell.]

3. *Same; indicia of fraud, burden of proof.*——Where a *bona fide* creditor shows *indicia* or badges of fraud, the burden rests on the grantee to repel the presumptions they generate; if his ability to pay is questioned, he must show the source or means by which he obtained the money, and that there was a real adequate consideration, actually paid; and whatever there may be, not in the ordinary or usual course of such transaction, should be fully explained.

4. *Same.*—The fact that the son, shortly after receiving a conveyance of lands from an insolvent father, conveys parts of them to each of the other children, without any valuable consideration shown therefor, casts suspicion on the transaction, which can be removed only by clear and convincing evidence of fairness, good faith, and an actual consideration, really paid.

5. *Conveyance; what evidence justifies decree annulling for fraud.*—The relationship of father and son between grantor and grantee; the grantor's known insolvency and apprehension of threatened suits; the failure of the grantee to show with particularity when, where, or how he obtained the means to pay the consideration; the fact that shortly after the conveyance the grantee, without any valuable consideration shown, conveyed parts of the land to each of the other children; the failure to show what disposition the grantor made of the large consideration mentioned in the deed,—justify the court in holding the conveyance fraudulent as to existing creditors.

6. *Decree of sale; what erroneous.*—Where, before bill filed, a fraudulent grantee conveyed parts of the lands to others, and put them in possession, and these persons, though named, are not made parties, nor description given of the portions of land sold to them,—a decree under which such parts of the lands could be subjected, is erroneous, and will be here corrected.

APPEAL from the Chancery Court of Dallas.

Heard before Hon. CHARLES TURNER.

The original bill in this cause was filed by the appellee, John P. Mitchell, against the appellants, Gabriel H. Harrell, Whitmell F. Harrell, and W. H. Harrell, and sought to condemn certain lands, then in the possession of W. H. Harrell, to the payment of a note made by the said Whitmell F. and Gabriel H. Harrell, to one Mitchell, the testator of appellee, which note then belonged to appellee.

The bill alleged that a judgment at law had been rendered in appellee's favor on the note, on January 10th, 1872, and that execution thereon had been returned "no property." It is alleged, that at the time said debt was contracted, and for many years afterwards, Whitmell F. owned a valuable plantation of 240 acres, which he and his wife, by voluntary conveyance, executed on the 19th day of October, 1865, had conveyed to their son W. H. Harrell; that at the time the deed was executed, Whitmell F. was insolvent, and that the conveyance was made with the intent to hinder, delay and defraud complainant.

The bill further charged, that when said deed of the 19th of October, 1865, was made, said Whitnell F. was a surety on the bond of one Thomas Walker, as administrator of Joseph Walker, and that said deed was made for the purpose of avoiding the payment of any liability that might be fixed

on Whitmell F. as surety, as well as to escape the payment of complainant's demand on said note.

Whitmell F. and W. H. Harrell answered, denying that Whitmell F. was insolvent at the date of the execution of the deed to W. H. Harrell, and averring that the deed was made in pursuance of a parol gift of the lands to W. H. Harrell in 1860.

The answers also alleged that Whitmell F., at the time he executed the deed of 1865, owned other real estate; that afterwards, on June 8th, 1868, said Whitmell F. conveyed these lands, and also the lands conveyed by deed of 1865, to his son W. H. Harrell, for the sum of $14,800, which was its fair value.

The complainant then filed an amended bill, alleging that the sale to W. H. Harrell, set up in the answer, was a simulated one, and that no consideration was paid for said land; that the conveyance was made to hinder, delay and defraud the creditors of Whitmell F.; that W. H. Harrell, at the time he purchased said lands, in June, 1868, was a man of but "small means, and not able to pay the large sum which purported to form the consideration of the deed." The amended bill averred that W. H. Harrell had, subsequently to the execution of said deed of June, 1868, conveyed certain portions of the lands embraced in it, by voluntary deeds to his wife and two of his children, and makes them parties defendant, praying that these deeds be declared fraudulent.

Whitmell F., W. H. Harrell, and his wife and children, answered the amended bill denying emphatically any fraudulent intent in the making of any of the deeds. The answer of W. H. Harrell sets up the conveyance made to him by his father, Whitmell F., in June, 1868, was made for the *bona fide* consideration expressed, and that he had actually paid the consideration named. It admits the execution of the deeds to the wife and children, and avers that he had also sold portions of said land to his brother Finis E. Harrell, to Alexander H. Averytt, his brother-in-law, and to his sister Mrs. Forss, and to James Brantley, and had put them in possession of the portions conveyed to them. He averred that the deeds to all the persons named, except his wife and children, were made on valuable consideration. None of these persons, except Harrell's wife and children, were made defendants.

W. H. Harrell testified that in June, 1868, he purchased of his father the lands mentioned in the bill, for the sum of $14,800, and paid him that amount in cash, in the office of

[Harrell v. Mitchell.]

Pettus, Dawson & Tillman, in the presence of Dr. A. G. Mabry and John W. Roberts; that he handed the money to Roberts to count, who, after counting it, handed it over to Whitmell F.; that the terms of sale had been agreed upon before the payment was made, and the deed had been prepared and sent to Blount county where his father then resided; that he met his father by appointment, paid the money as above stated, and received the deed. He denies that he knew of the existence of complainant's debt at the time he made such purchase. In reply to a question as to where he obtained the money to make the payments, the witness stated, "I paid for said land with money which I received from the sale of cotton and corn and meat and cows, and received for debts due to me. I can not say how much of said money I received from each of these sources, but most of it was for cotton sold by me. It is not possible for me to state, when, where and from whom I got each portion of the money." Roberts, a witness for defendants, stated that he was present in the office of Pettus, Dawson & Tillman, and saw W. H. Harrell pay his father a large sum of money; that he was not positive as to the amount, but "thought it was eight or ten thousand dollars; that he had an indistinct recollection of a deed being passed between them."

The complainants introduced in evidence certified transcripts from the Circuit Court of Dallas, showing that judgments had been recovered against Walker, (upon whose bond as administrator of the estate of Josephus Walker, deceased, said Whitmell F. was surety,) in the years 1867 and 1868, in favor of various persons, for over twenty thousand dollars. The return of execution on these judgments showed that they had been levied on certain lands and personalty of said Walker, which were sold by the sheriff in 1869. After paying the executions and costs, &c., and setting apart the exemptions to the widow of Walker, there remained a balance of over a thousand dollars, which was claimed by said Thomas Walker's administrators. The transcript of the records from the Probate Court of Dallas showed that before Walker's death, and in June, 1868, proceedings were pending to compel him to settle his administration of the estate of Jesephus Walker; and that he was then largely indebted on account of the administration. Shortly after Thomas Walker's death, his estate was declared insolvent. The defendants objected to the foregoing evidence, on the ground of irrelevancy, but their objection was overruled.

It appears from the evidence that the land conveyed to

W. H. Harrell in 1868, constituted the bulk, if not the whole of the property then owned by Whitmell F. who had been rendered insolvent by the result of the war. It was also shown that Whitmell F. was at the date of the deed in feeble health, and that W. H. Harrell had been for a considerable period of time his general agent in the transaction of business.

No evidence showing what had become of the money paid by W. H. to Whitmell F. Harrell was introduced by either of them; and it is not shown that the persons to whom Harrell conveyed, on an alleged valuable consideration, had paid him anything.

J. J. Moore, a witness for complainant, testified as to the pecuniary condition of W. H. Harrell at the time of the alleged purchase, stating that from his knowledge of the farming operations carried on by him, and which was his only source of income, so far as he knew, he could not have made the sum expressed as the consideration of the deed; but stated that he might have had other employment, of which he did not know. He further stated that his credit was good. This witness further testified, that while he was at Blount Springs in 1868, "W. H. Harrell was negotiating for the purchase of a tract of land in Blount county, and the said W. H. Harrell told me that he was trying to buy it for his father, who was to take it in part payment of the plantation in Dallas, which he, W. H. Harrell, had got from his father."

Two other witnesses were examined who stated that said Harrell had ability to pay the purchase-money, but their statement as to this was based on the fact that said Harrell had been his father's overseer for several years, and he owed him therefor; that his services as overseer were worth $1,000 per annum.

The chancellor rendered a decree granting the relief prayed, and accompanied it by a written opinion, in which he examined the evidence, and laid considerable stress on the testimony of Moore.

After this final decree had been rendered, defendant applied for a rehearing on the ground of newly discovered evidence, and because the witness Moore was mistaken as to material statements made by him. An affidavit of Moore was filed in support of this application, in which he testified that he was mistaken as to the date of the conversation mentioned in his original deposition, and that it took place in 1869 instead of 1868, as stated in his testimony; he fur-

[Harrell v. Mitchell.]

ther testified that he was mistaken in stating that W. H. Harrell had told him that he was negotiating for the purchase of the lands for his father. The court granted the rehearing and made an order granting the defendant leave to reexamine the witness. By the testimony of this witness, on his second examination, it appeared that W. H. Harrell had conversed with him since, and by calling his attention to the surrounding circumstances, and arguing with him, had convinced him he was mistaken as to these matters.

Complainant moved, on this ground, to suppress the deposition of Moore taken on his second examination. The chancellor suppressed the deposition and rendered a decree declaring the deed of Whitmell F. to W. H. Harrell, dated on the 19th October, 1865, the deed between the same parties of June 8th, 1868, and the deed of W. H. Harrell to his wife and children, to be each void as to complainant, and ordering a sale, for the purpose of paying the debt due complainant, of the lands embraced in each of these deeds including also the parts which W. H. Harrell had sold to persons who were not made parties.

The decree, and the overruling of objections to the record evidence, are now assigned as error.

PETTUS, DAWSON & TILLMAN, and SATTERFIELD & YOUNG, for appellant.—The court will always permit the reexamination of a witness, after publication of the testimony, in cases where it appears by his affidavit that the witness has made a mistake in his prior deposition.—Dan. Ch. Pr. vol. 2, pp. 1150, 1156; *Kirk v. Kirk*, 13 Vesey, 286; *Denton v. Jackson*, 2 John. Ch. 526.

2. The transcripts from the Circuit Court were inadmissible. The defendant, W. H. Harrell, was neither party nor privy to the proceedings evidenced by said transcript. The transaction which led to the execution of the deed of June 8th, 1868, were consistent with honesty and a *bona fide* purchase by the son. The evidence clearly shows that the recited consideration was actually paid in cash, to the grantor, at the time the deed was delivered. There is no dispute that the price paid was not a fair and full one, and the only proof which tends to cast distrust on it, is the fact that the grantor was the insolvent father of the grantee. The evidence fails to show that the grantee even knew of the existence of the debt to appellee. The mere fact of their relationship is not enough to show *mala fides*. Even if Whitmell F. intended to place his property beyond the

[Harrell v. Mitchell.]

reach of his creditors, there is no evidence that W. H. Harrell either knew of or participated in the intention. He was a *bona fide* purchaser for value.—See *Tompkins v. Nichols*, 53 Ala. 197. It is a rule in courts of law, as well as courts of equity, that fraud is not to be presumed, but it must be established. Circumstances of mere suspicion, leading to no certain results, will not be deemed a sufficient ground to establish fraud.—1 Sto. Eq. Jur. § 190; *Stiles & Co. v. Lightfoot*, 26 Ala. 445; *Smith v. Branch Bank*, 21 Ala. 125; *Henderson v. Mabry*, 13 Ala. 713; *Ravisies v. Alston*, 5 Ala. 292.

W. M. BROOKS, and FELLOWS & JOHNS, *contra.*—The evidence clearly established the insolvency of the grantor at the date of the deed. The grantee was his son; had been and was his general agent, and it is fair to suppose knew his condition. The conveyance stripped the grantor of all his visible property. The consideration is a large sum, the money is paid with parade in the presence of witnesses. The son fails to show how he obtained the money, to make such a purchase. The grantor fails to show what has become of the large sum he is said to have received. The land is soon after deeded to various sisters and brothers of the grantee. The evidence shows that the son could not have had the large sum he paid. The whole surroundings stamp the transaction as a fraud.—See 3 Stew. 243; *Moore & Pain v. Tarlton & Paine*, 3 Ala. 444; *Beall v. Williamson*, 14 Ala. 62; *Pulliam & Co. v. Newberry*, 41 Ala. 168. The opinion of the chancellor on the facts should not be disturbed, unless there is a clear, decided preponderance of the evidence against his conclusion.—39 Ala. 63; 42 Ala. 147; 46 Ala. 161. The second deposition of Moore should have been suppressed. The witness was conscious of no mistake, until his attention had been called to the circumstances, and to use his language he had been argued into it by the defendant. It is perfectly natural that when the defendant saw the effect of the evidence he should endeavor to argue the witness into the belief that he had made a mistake; but such testimony should never be received. A defendant should never be allowed to thus manufacture testimony for himself. Such evidence would tend to defeat justice, and opens a wide door to fraud and perjury.

BRICKELL, C. J.—A reexamination of a witness, after the evidence has been published, a hearing had, and final

decree rendered, it is said by Chancellor KENT, was never permitted, "merely to alter or correct testimony, after the cause has been heard and discussed, and decided upon the very matters of fact to which that testimony referred. It would be setting a most alarming precedent, and would shake the fundamental principles of evidence in this court."—*Gray v. Murray*, 4 John. Ch. 415. In *Johnston v. Glasscock*, 2 Ala. 249, an application was made to this court to modify a decree of reversal, so that new evidence could be taken in the court of chancery, to explain and correct discrepancies in the evidence, these discrepancies having controlled largely the determination of questions of fact involved; the application was refused, the court remarking: "It is sufficient to determine us to refuse this petition that if the motion had been addressed to the chancellor, after the decree it should not have been allowed."

The rule in courts of equity, disallowing except under very special circumstances, the examination of witnesses after the publication of the evidence, even before hearing and decree, is founded on the soundest policy and highest wisdom, and it is feared that it is not enforced as rigorously as the ends of truth and justice require. It is not only a safeguard against fabricated evidence, but it quickens and keeps alive the diligence of suitors. "It is of great importance in the administration of justice, and ought to be constantly inculcated upon suitors, that they must bestow *diligence* in the prosecution and defense of their suits, and that every step in the progress of the cause, is to be taken *orderly* and in *due season,* and that though the courts are indulgent to mistakes and unavoidable accidents, yet they can not be so to the mere negligence or wilful defaults of parties, which only tend to hinder, fatigue and oppress each other."—*Hamersly v. Lambert*, 2 Johns. Ch. 432.

The chancellor could properly and ought to have refused the rehearing, and the order for the reexamination of Moore. The alteration and correction of his testimony on a point which had been "critically discussed in court, and the bearing and effect of every part of it understood and judicially settled," was unauthorized according to the authorities to which we have referred. It opened "a door to fraud and perjury, by holding out or encouraging inducements to supply insufficient evidence, or to withdraw or explain away that which has been oppressive." In this instance it may be there was not, and we would not be understood as intimating there has been, either fraud by the party reexamining,

or perjury by the witness; but if the practice pursued were tolerated, an unscrupulous suitor and witness, would find the temptation and the opportunity.

The order having been made and the reexamination had, it is not matter of surprise, that the party obtaining the order, should have endeavored to convince the witness of his error, and to obtain from him testimony, which if it did not contradict, would neutralize or weaken the force of that he had already given, the bearing and effect of which the court had declared. That witnesses may be saved from such influences, is one of the reasons on which the rules disallowing a reexamination is founded. We are satisfied the second deposition of Moore was properly suppressed; and the chancellor could have gone further and rescinded the order for his examination.

Where creditors of a vendor, or of a grantor, assail a sale or conveyance he has made, as intended to hinder, delay and defraud them, the fact that at the time of sale, suits were pending against him, or that he was apprehensive suits would be commenced, and his general pecuniary condition, are facts of importance, they are permitted to prove. The value of the evidence depends upon its connection with other facts, and of the evidence of good faith, and fairness in the transaction, which may be given in support of it. The certified record from the court of probate, showing the liability of the grantor, as the surety of Walker, and the proceedings for the settlement of Walker's administration, pending when the conveyance was made, was admissible evidence. If these proceedings ripened into decrees against Walker, such decrees were causes of action against the grantor, on which suits at law could have been immediately commenced. Or on a return of execution against Walker, *no property found* in whole or in part, execution could have been issued against the grantor. The insolvency of Walker, would have increased the grantor's apprehension of suit or proceedings against himself, and of the fact there could be no better evidence, than judgments rendered against him, and the return of executions issuing thereon.

3. It is very clearly shown, we may say the fact is not questioned, that the conveyance now impeached, was of all the visible property of the grantor, subject to execution, and that when it was made, and from a date anterior, the close of the war, and the emancipation of slaves, he was insolvent. It is also shown clearly, we think, that his son, the grantee, was apprised of his insolvency. Their relationship, the gen-

eral control of the business of the grantor, in consequence of his ill-health, which was entrusted to the son, the number of years after he became of age, during which he lived with, or near the grantor, and the mutual confidence they reposed in each other, are facts from which knowledge of the grantor's insolvency can justly be inferred. Here, then, are *indicia*, or badges of a fraudulent conveyance, and *bona fide* creditors have the right to require, that these shall be explained, and all unfavorable presumptions arising from them repelled by evidence, *first*, that the conveyance is founded on an adequate, valuable consideration paid or secured to the grantor.—*Crawford v. Kirksey*, 55 Ala. 293; *Hubbard v. Allen*, 59 Ala. 283. In the absence of clear and convincing evidence of this fact, the right and equity of the creditor must prevail. The evidence of the fact lies within the knowledge of the grantee; and the fact was of such recent occurrence, there could be no difficulty in producing it. It is so easy for parties standing in the relation of the grantor and the grantee to feign a consideration for the transfer of the property of the one to the other, and to fabricate the evidence of its payment, that the transaction can not be sustained, unless it is shown there was a real adequate consideration actually paid, and whatever there may be, not in the ordinary or usual course of such transactions, should be fully explained. When as in the present case, the consideration is large, amounting to several thousand dollars, there should be clear proof by the vendee, if his ability to purchase is questioned, of his means, or of the source from which he obtained the money. The absence of evidence of the disposition made by the grantor of the money it is alleged he received, becomes a material circumstance. Clear evidence of ability to make the purchase, is vital to sustain the transaction against creditors whose right to appropriate the property of the grantor to the satifaction of their demands is clear, and founded on law and good conscience.—Bump, Fraud. Con. 92.

Without noticing the evidence in detail, we concur with the chancellor, that it is insufficient to establish the fact of payment. It may be the vendee had accumulated some money, but his evidence of the source from which he obtained the amount paid the vendor in the presence of witnesses, is too vague and indefinite to support a transaction attended with the *indicia* of fraud, which attend the conveyance to him. Where the money had been kept, if he had it on hand for any length of time prior to the purchase, could have been easily proved. Or, if not on hand, and it was obtained for

the purpose of making the purchase, the persons from whom he obtained it, ought to have been examined. Some clear, satisfactory evidence that it was his money, not mere general statements as to the business in which he had been engaged, and the profits derived from it, it was his duty to have given. Not only is the evidence vague and indefinite as to the sources from which he obtained the money, but there is an absence of all evidence, as to the disposition made of it, by the grantor. He has not invested it in the purchase of other property which could be reached by his creditors—he has not applied it to the payment of debts, or if he has, he fails to nominate the creditors to whom it was paid,—he has it not in possession—and it is not credible, nor is it pretended, that in the time elapsing between the payment of it, and his examination as a witness, it had been expended in the support of himself and family. Under these circumstances, it is impossible to support the conveyance against creditors.

Another fact is unexplained, which casts suspicion on the transaction, and which could be removed only by clear evidence of fairness, good faith and an actual consideration, really paid, and justly disposed of by the grantor. In a short time, the grantee without valuable consideration, so far as is shown by evidence, conveys to his brothers, and brother-in-law, parts of the lands ; himself, brother and sister, being the only children of the grantor. A division of the lands, all his estate of any value among his children, if he had been unembarrassed, and free to convey without a valuable consideration, is the disposition, the grantor would probably have made, at his advanced age, and in his state of health. That is the result, following the conveyance interposed to defeat the claims of his creditors, and how, and why it followed, is unexplained.

The relationship of the grantor and grantee, the known insolvency of the grantor, the pendency or apprehension of suits, on pecuniary debts or liabilities then existing, are but circumstances, and of themselves, may not justify the conclusion that the sale and conveyance is fraudulent. Whatever of unfavorable presumption may be drawn from them, is weakened and generally removed by the 'evidence of a full consideration actually paid.—*Montgomery v. Kirksey*, 26 Ala. 172. But as in the first instance, before the conveyance can be impeached, the creditor must prove the existence of his debt; when it was contracted, or that there were then creditors who could be hindered or delayed by it, the grantee to support the *bona fides* of the conveyance, when the indebtedness

[Harrell v. Mitchell.]

has been established, must prove that it is supported by a valuable consideration. In other words, claiming under the conveyance in opposition to the rights of creditors, he must prove a consideration adequate, of the kind expressed. If it be money paid as the price, the payment of the money must be proved; if it be a debt of the grantor extinguished, the existence and consideration of the debt must be proved. The circumstances surrounding the parties, the relationship existing between them, their subsequent conduct may demand higher and more convincing evidence of the fact of consideration than would be exacted if no relationship existed between them, if there were no circumstances surrounding them exciting just suspicion, and their subsequent conduct was consistent only with a fair sale and conveyance for a real consideration.—Bump on Fraud. Con. 96–8; *Hubbard v. Allen*, 59 Ala. 283. In criminal and in civil cases, presumptions arise from the connection of parties, the circumstances surrounding them, the motive these circumstances and the connection may create, which become conclusive, if unexplained. When explanation lies within the power of the party, the presumption strengthens, if it is not as full and clear as the party could and ought to have made it. *Hawkins v. Alston*, 4 Ired. Eq. 137; *Satterwhite v. Hicks*, Busbee (Law), 107. It is true, fraud is never presumed— that it must be proved by clear and satisfactory evidence, and when a transaction is susceptible fairly of two constructions, the one which will support and free it from the imputation of impurity of intention will be adopted. Fraud, like crime, may nevertheless be proved by circumstances—it is seldom capable of being proved otherwise—and the number or character of the circumstances which may amount to proof of it can not be defined. Each case depends largely on its own particular facts.

4. There is however an error in the decree of the chancellor which must be here corrected. After the conveyance to Whitmell F. Harrell, and before the filing of the bill, it is averred in the bill, he had conveyed parts of the land to his brother-in-law, and to other persons. The parts of the lands so conveyed are not designated, nor are these grantees made parties. They were necessary parties, if it was intended to subject the lands conveyed to them, and in their absence, it was erroneous to render a decree, under which the lands conveyed to them could be sold. The lands conveyed by Whitmell H. to his wife and children, are particularly described in the amended bill, and they are made parties de-

fendant. The conveyance to them is voluntary, and their right is not superior to, but is infected with the taint of the title of the donor. These lands, and the lands averred to remain in possession of said Whitmell H., could properly be condemned to the satisfaction of the demand of the appellee. The remaining lands could not be, in the absence of the parties to whom they had been conveyed. In this respect, the decree of the chancellor will be here corrected, and as corrected, affirmed. It does not appear that the attention of the chancellor, or of the appellee, was directed to this error, and it would not be just under the circumstances, the appellee should be taxed with the costs of this appeal. Let the costs of the appeal be taxed against the appellant.