# Nunn *v*. Nunn.

*Bill in Equity by Executor, asking Instructions as to Administration and Settlement of Estate.*

1. *Diligence required of administrators; liability for interest.*—Administrators, like other trustees, "are not insurers, and are not expected to be infallible"; but, while the court "does not wish to overturn or weaken any of its rulings heretofore made favoring trustees who have acted in good faith and with rea-

[Nunn v. Nunn.]

sonable diligence," it holds that there was no error in this case—an appeal from the settlement of an administrator's accounts, under a bill asking the instructions of the court in the administration of the estate—in charging the administrator with interest on funds in his hands collected during the years 1868–71, after the expiration of six months from the time of collection by him, which he was authorized, by an order of court, to lend out on bills of exchange and promissory notes with two good sureties, and which he failed to lend out; although he testified, as a witness for himself, "that he did not try to lend out the money, because he considered it unsafe to do so, as the country was so unsettled that he did not know who was safe to lend money to, and that he never used any of the moneys belonging to the estate for his own benefit, and never mixed or mingled it with his own."

2.   *Re-reference to register; what is revisable.*—After the register has made his report under a reference, an application to the chancellor for a re-reference of the matters of account, in order that the party asking it may adduce additional evidence, is addressed to the discretion of the chancellor, and his refusal of it is not revisable on error.

3.   *Exception to register's report in stating account.*—To enable the appellate court to revise any item in an account stated by the register under a reference, an exception to it must be distinctly reserved, as required by the rules of practice.

APPEAL from the Chancery Court of Autauga.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 14th November, 1859, by Lazarus B. Parker, as the executor of the last will and testament of William Nunn, deceased, against the widow and children of said testator, as heirs and distributees of his estate, and legatees and devisees under his will; and sought the instructions of the court in the administration and settlement of the estate.   The testator died in 1858, in said county of Autauga, where he resided, leaving a large estate, which consisted principally of a plantation and slaves. The will was duly admitted to probate, but the widow dissented from its provisions, and also renounced her right to letters testamentary as one of the executors named in the will.   By the provisions of the will, the estate was to be kept together until the children severally became of age. Formal answers to the bill were filed, and the chancellor assumed jurisdiction of the estate.   In December, 1865, an interlocutory decree was rendered, "that the executor, at any time he has any cash funds on hand, over and above what may be needed in the course of administration, is authorized to loan the same, on bills of exchange, or promissory notes with two approved sureties." In February, 1868, Parker resigned as executor, by leave of the court, and made a final settlement of his accounts; and he was ordered to "pay the moneys in his hands to his successor," Theodore Nunn, who was appointed administrator *de bonis non*, with the will annexed, and made a party in that capacity, "and to turn over all other property to his successor"; and it was further ordered, "that said administrator proceed to admin-

[Nunn v. Nunn.]

ister said estate in strict accordance with the previous orders of the court, with leave to apply, from time to time, for further instructions." Various orders in the cause were made from term to term; and at the September term, 1870, the administrator was ordered to file his accounts and vouchers for a settlement. At the May term, 1871, the administrator filed his accounts, showing the amount of assets which he had received and collected, and the amount of his disbursements and expenses; and the chancellor referred the matters of account to the register. The register made his report at the next term, therein charging the administrator with interest on the funds in his hands, after the expiration of six months from the time of collection. The administrator filed exceptions to the report on this account, which were overruled by the chancellor, and the report confirmed; and an application for a re-reference, in order that additional evidence might be adduced on the question of interest, was refused. The overruling of his exceptions to the report, the refusal of the application for a second reference, and the decree on the account, are now assigned as error by the administrator. It is unnecessary to state the facts relative to the contested items of the account, as they appear in the opinion of the court.

WATTS & SONS, W. H. & W. T. NORTHINGTON, and DOSTER & ABNEY, for appellant.

GUNTER & BLAKEY, and G. A. NORTHINGTON, contra.

STONE, J.—In the partial, or annual settlement made by appellant in 1871, he was charged with interest on the sums of money which had come into his hands from his predecessor, and from other sources. The administrator excepted to the register's report, charging him interest on these collections. The register allowed six months to the administrator, after he received these several sums, within which he charged him no interest. These six months were allowed to him, that he might secure a safe investment.—Harrison v. Harrison, 39 Ala. 419. There had been an order of the court, authorizing the administrator to lend out the funds of the estate, on bills of exchange, or promissory notes, with two good and sufficient sureties. On the taking of this account before the register, Theodore Nunn, the appellant, was introduced as a witness by the guardian ad litem, and testified, "that he did not try to loan out the money, because he considered it unsafe to do so, as the country was so unsettled that he did not know who was safe to loan money

to; and that he never used any of the money belonging to said estate for his own benefit, and that he never mixed or mingled it with his own." The time referred to in this testimony was from 1868 to 1871; and this was all the evidence before the register, bearing on the question of investing the funds of the estate.

We do not wish to overturn or weaken any of the rulings heretofore made in this court, favoring trustees who have acted in good faith and with reasonable diligence. They are not insurers, and are not expected to be infallible.—*Gould v. Hayes*, 19 Ala. 595; *Henderson v. Simmons*, 33 Ala. 291; *Ferguson v. Lowery*, 54 Ala. 510; *Foscue v. Lyon*, 55 Ala. 440; *Lyon v. Foscue*, 60 Ala. 468. On the testimony above, we do not think there was error in charging the administrator with interest in the settlement of 1871.

After the report of this account had been made to the court, the appellant filed his sworn petition in the Chancery Court, in which he set forth that, on the taking of the account before the register, "there were many facts and circumstances touching the same that he failed to introduce on that occasion, from the fact that he was not aware at that time that he could or would be permitted to make such proof; * * that he made honest efforts to lend said money to solvent parties, on notes and personal security, and could not do so." The petition prayed a re-reference of the account to the register, and stated other grounds for such re-reference, not necessary to be here noticed. The court refused the prayer of the petition, and we are asked to review and reverse the action of the chancellor in this regard. This question is in the nature of an application to take further testimony, or to re-examine a witness, after publication passed. Courts are, and should be, always cautious in granting such orders. *Harrell v. Mitchell*, 61 Ala. 270, and authorities therein cited. The question of re-reference was addressed to the discretion of the chancellor, and will not be reviewed.

It is objected, also, that in the settlements by the administrator *de bonis non*, made after the settlement of 1871, he was charged, and improperly charged, with compound interest, being interest upon interest. These several settlements were made May 20th, 1873; May 20th, 1874; May 20th, 1875; May 20th, 1876; November 20th, 1877; and the final settlement made May 25th, 1878. There was no exception filed to any of these reported accounts and settlements, until the final accounting in 1878. It was then sought to have all the accounts re-cast, and the alleged compound interest eliminated therefrom. As we understand the record in this case, each of the said settlements, except the final one, was made

on account current filed by the administrator, in which he charged himself with interest on the balance found and decreed against him on the last preceding settlement. In these conditions, he can not be heard to complain; for, *consensus tollit errorem*. Nor is he injured in the first three of those settlements; for, in each of them, his disbursements, including partial distributions made by him, exceeded the sum of the interest charged against him. It was his duty to pay administration expenses, and to pay out other proper charges—even including partial distributions—out of interest accumulated in his hands; and when so paid, they became an invested fund to his credit, drawing interest in his favor. So, unless the interest he was charged with, for any given year, exceeded the gross sum of his disbursements, distributions and expenditures during that year, with the interest allowed him thereon, he was not charged interest upon interest.

The chancellor, on the petition of appellant, referred the final account back to the register, with instructions to ascertain if the administrator had been charged interest upon interest. In the amended report, that officer evidently attempted to eliminate all compound interest; for he charged no interest upon interest. In one item we confess ourselves unable to understand the amended report. It was not necessary, in restating the account, to go behind the settlement of May, 1875. Up to and including that settlement, the annual disbursements and distributions, for which the administrator received credit, exceeded by a considerable sum, each year, the interest with which he was charged. In the settlement of 1875, large sums were allowed as credits, for expenditures, and for payment in full to some of the legatees who had become of age. In this way, the sum of the assets, which stood at $26,081.33 on the debit side of the account in 1875, was reduced to $14,225.36 in the settlement of 1876. This sum, as we understand it, was left in the hands of the administrator, after he had been allowed for all disbursements and distributions, up to and including the settlement of 1875. In the restated account, the register first took an account of interest accruing, charging the administrator with each year's interest, but computing no interest upon interest, and taking from this the sums of the disbursements and distributions for those several years; and in this way he ascertained there was an excess of $702.62 of all interest accrued, over all disbursements and distributions, after the settlement in May, 1875. This excess of interest, $702.62, was placed to the debit of the administrator on final settlement, but he was charged no interest thereon. This carried out the pur-

pose of the court, not to require interest upon interest. But the administrator was also debited as follows : " Amount of above allowed, but not severed from the *corpus* of the estate, $2,710.36." This is the item we do not understand. We can not learn of what it is composed. If it was the sum of the partial distributions made by him during those years, and for which he had received credit in the interest account, then the charge is manifestly right ; for those distributions should be computed, in ascertaining an aggregate sum for division. The administrator would be made whole, by allowing him credit for the same amount, in his settlement with the legatees. If, however, there enters into this sum the expenses and disbursements of the administration proper—the disbursements which do not go to the legatees as such—then he was improperly charged ; for he could claim no corresponding credit with any legatee, to make him whole. Looking carefully into the accounts, we can make out only some $1,300 of distributions allowed as credit to the administrator in the interest account ; and if we are correct in this, then this sum, say $1,300, should have been charged against the administrator, instead of $2,710.36, which was charged. This would produce an error, to the prejudice of the administrator, of say, $1,400. The register, however, in making his final addition of debits, committed an error of $990 in favor of the administrator, so that the real sum with which he was charged was $1,720.36, instead of the apparent sum of $2,710.36. Hence, according to our estimates, he was debited with only some $400 too much. There was, however, no exception in the court below to this item of the account, and we can not consider it.—1 Brick. Dig. 770, §§ 1924, 1930, 1935.

Affirmed.