# Gordon, Rankin & Co. v. Tweedy.

*Creditor's Bill in Equity, to set aside Fraudulent Conveyance.*

1. *As to set-off of permanent improvements, against rents.*—The right to set off the value of permanent improvements, in reduction or recoup-

[Gordon, Rankin & Co. v. Tweedy.]

ment of rents, is purely equitable, and is only allowed in favor of a *bona fide* occupant or possessor of land: actual notice of the assertion of a superior title is fatal to the occupant's claim for improvements, and the filing of a bill against him, by the person claiming such superior title, is the most solemn and authoritative form of notice.

2.   *Deed constructively fraudulent, but standing as security for indemnity of grantee; liability for rents, and allowance for improvements and taxes.*—A conveyance being held constructively fraudulent at the suit of creditors, but allowed to stand as a valid security for the reimbursement or indemnity of the grantee, to the extent of the consideration actually paid; on the statement of the account, he is chargeable with rents during his possession, and is entitled to a credit for the value of permanent improvements erected by him before (but not after) the filing of the bill, and for all taxes paid, whether before or after the bill was filed.

3.   *Taking additional testimony after remandment of cause.*—The chancellor's first decree in this cause having been reversed by this court on appeal, and the cause remanded, the grantee was properly allowed to take additional testimony, with the view of proving the actual consideration paid by him, for which, under the decision of this court, the deed was allowed to stand as a valid security; the same rule applying in such cases as in an application for a re-reference of matters of accounts, or for the re-examination of witnesses after the publication of testimony.

4.   *Proof of transfer of certificates of railroad stock.*—The holder of certificates of railroad stock may rely on his possession, as *prima facie* evidence of his ownership; and if he undertakes to prove title by written transfer, the books of the company are the best evidence of it; but, on proof of the fact that the books are in another State, beyond the jurisdiction of the court, secondary evidence of the transfer is admissible.

5.   *Value of wife's inchoate right of dower; how ascertained; judicial knowledge of Annuity Tables.*—There is no way in which the value of the wife's inchoate or contingent right of dower in her husband's lands can be proved, with any degree of accuracy, except by a calculation based on what are commonly called "Annuity Tables," the "American Table of Mortality" being now regarded as the orthodox standard throughout the United States; judicial notice of, which table may be taken by the chancellor, or by the register on a reference.

6.   *Same; when separate estate not to be computed.*—In estimating the value of the wife's dower interest in her husband's lands, when perfected by his death, the value of her statutory estate must be computed and deducted (Code, §§ 2715–16); but this principle has no application, where it is necessary to estimate the value of her inchoate interest in a tract of land, the relinquishment of which formed the consideration of the husband's conveyance of another tract to her, which conveyance is assailed by creditors.


APPEAL from the Chancery Court of Lawrence.

Heard before L. B. COOPER, esq., as special chancellor.

The bill in this case was filed on the 27th May, 1875, by the appellants, as creditors of Robert E. Tweedy, against said Tweedy and his wife; and sought to set aside, on allegations and charges of fraud, certain conveyances of property by said Tweedy to his wife. On the first hearing of the cause, the special chancellor sustained the several conveyances as valid, and dismissed the bill; but his decree was reversed by this court on appeal, and the cause remanded, as shown by the report of the case (71 Ala. 202–11), where all the material facts are stated. The present appeal is taken from the decree

rendered by the special chancellor on the confirmation of the register's report under a reference of the matters of account, and his several rulings on exceptions to the report; and these rulings are assigned as error. The opinion of the court states the material facts.

PHELAN & WHEELER, for appellants.

E. H. FOSTER, and R. O. PICKETT, *contra.*

SOMERVILLE, J.—When this case was last before us, at the December term, 1881, it was held that the deed of conveyance executed by R. E. Tweedy to his wife, bearing date in November, 1873, was not absolutely void for actual fraud, but only voidable, at the instance of existing creditors, for constructive fraud, on account of the grossly inadequate consideration upon which it appeared to have been based. It was permitted, however, on well settled principles of equity, to stand good as security for the purpose of reimbursing or indemnifying the grantee, to the extent of the true and real consideration proved.—71 Ala. 202–14.

Upon remanding the cause for further proceedings, Mrs. Tweedy amended her answer, interposing a claim for *permanent improvements* made upon the land by her during her adverse occupancy, and also for *taxes* paid during this period. The chancellor allowed her for improvements made *after*, as well as before the filing of the bill; and objection to this action on his part is raised by proper exception and assignment of error. In this, we are clearly of the opinion that he erred.

It is well known that, according to the strict rule of the common law, no allowance was made for such improvements, however valuable or beneficial, they being regarded as having been made at the peril of the possessor of the freehold. The right to set off such improvements in reduction or recoupment of rents recoverable by the complainant, is purely an equitable one, borrowed originally from the civil law by Courts of Chancery. The rule prevails only in favor of a *bona fide* occupant or possessor of land. He must be one who is not only in possession, but who asserts adverse ownership under color or claim of title. A mere naked intruder, or trespasser, as held by this court, does not come within the letter or spirit of the rule.—*The New Orleans & Selma R. R. v. Jones,* 68 Ala. 49; s. c., 70 Ala. 227. It is equally clear, on both principle and authority, that one who has knowledge of an adverse claim is not entitled to the right to set off improvements made after acquiring such knowledge. A *bona fide* occupant or possessor has been defined to be, "one who not only *honestly supposes*

[Gordon, Rankin & Co. v. Tweedy.]

himself to be vested with the true title, but *is ignorant that the title is contested by any other person claiming a superior right to it.*"—*Green v. Biddle*, 8 Wheat. 1; *Cole v. Johnson*, 53 Miss. 94; Sedg. & Wait's Trial of Titles to Land, § 694.

*Actual notice* of such adverse claim, according to the better rule, is generally held to be fatal to the occupant's claim for improvements, although mere *constructive notice*, such as the law implies from the record of a deed, is deemed insufficient. This principle seems to be generally adopted everywhere, so far as I have been able to discover, except in the State of Texas, where a different rule prevails, and actual notice is not regarded as a conclusive test of good faith. In *Jackson v. Loomis* (4 Cow. 168; 15 Amer. Dec. 347), the distinction under consideration seems not to have been discussed or clearly taken. The authorities generally, however, are not wanting in harmony.—2 Story's Eq. Jur. (Redf. Ed.) §§ 799, 799a, 799b; Trial of Titles to Land (Sedgw. & Wait), §§ 694, 705; Sedgwick on Dam. p. 140 [12] *note;* Blackwell on Tax Titles, *marg. p.* 590–592; Burroughs on Tax. 345–6. The rule, which we here announce, was followed by this court in *Horton v. Sledge*, 29 Ala. 478, which was a suit in equity for partition of lands, and an account of rents and profits, brought by one tenant in common against another. The defendant was allowed only for such permanent and valuable improvements as were made "before he was apprised that his title was disputed."

The filing of the bill is considered by all the authorities as tantamount to actual notice. In fact, it is the most solemn and authoritative of all forms of notice.

No allowance, in view of these principles, should have been made, in taking the account, for improvements erected or made after the filing of the bill.

The defendant, Mrs. Tweedy, was entitled also to be reimbursed for any taxes paid by her on the land in controversy, during the time of her occupancy, whether before or after the filing of the bill. This is not denied; but it is insisted that the allowance for taxes, as made by the register, covered not only the taxes paid on the 328 acres in controversy, but also another tract of 180 acres, known as the "Harris tract," then in the defendant's possession. This view is, in our judgment, sustained by the evidence. The taxes paid on the three hundred and twenty-eight acre tract should alone have been allowed.

3. The chancellor committed no error, in our opinion, in permitting the defendant, Mrs. Tweedy, to take additional testimony, on remandment of the cause, with the view of proving the value of the consideration of the deed from her husband. This consideration is shown to embrace, not only the wife's contingent or inchoate right of dower relinquished by her in cer-

tain described lands, but also certain railroad stock, the shares
of which belonged to her statutory separate estate, and the pro-
ceeds of which the husband had converted to his own use.   The
same rule should prevail here, as in applications made to the
chancellor for re-reference of matters of account, or the re-
examination of witnesses after the publication of testimony.
It should never be permitted, as observed by Chancellor Kent,
" merely to *alter or correct* testimony, after the cause has been
heard and discussed, and decided upon the very matters of fact
to which that testimony referred.   It would be setting," he said,
" a most alarming precedent, and would shake the fundamental
principles of evidence in this court."—*Gray v. Murray*, 4 John.
Ch. 415, cited and approved in *Harrell v. Mitchell*, 61 Ala. 270.
The right to thus re-open a cause in equity, upon the merits of
newly-taken testimony, in any of these various forms, is one
which is discountenanced, as it should be, by the courts.   But
its exercise is addressed to the sound discretion of the chancel-
lor, and it is often granted to correct some inadvertent or other
defect in the evidence, or where there has been an omission to
prove a writing, or even a particular fact upon which the case
depends.—*Harrell v. Mitchell*, 61 Ala. 270; *Nunn v. Nunn*,
66 Ala. 35; *Johnston v. Glasscock*, 2 Ala. 218, 251; *Hood v.
Pimm*, 4 Sim. 101.

, 4.   There was no error in allowing secondary evidence to be
introduced for the purpose of proving a transfer of the railroad
stock, on the books of the company, to Mrs. Tweedy.   While
the defendant might have relied upon the mere possession by
her of the certificates of stock, as *prima facie* evidence of own-
ership, if she undertook to prove a title by written transfer, it
devolved on her to produce primary evidence of it, or else an
excuse for failing to produce it.—*Patterson v. Kicker*, 72 Ala.
406; 2 Add. Contr. § 660; *Gordon, Rankin & Co. v. Tweedy*,
71 Ala. 202.   It was proved, in excuse, that the books of the
railroad company, containing a record of the original transfer,
were in another State, beyond the jurisdiction of the court;
and this fact authorized secondary evidence of the transfer, by
copy, or otherwise.   No other method of proof was practicable.
*Elliott v. Stocks & Bro.*, 67 Ala. 290; *Ware v. Morgan, Ib.*
461.

5.   It does not appear from the record what rule, if any, was
adopted by the register in ascertaining the value of Mrs. Twee-
dy's contingent or inchoate right of dower in the lands con-
veyed by her husband to Houston and Bynum.   We are aware
of no possible way in which this can be done, except by a cal-
culation based on what are commonly called "Annuity Tables."
The rule was so declared when the case was last before us.
*Gordon, Rankin & Co. v. Tweedy*, 71 Ala. 202.   The question

[Gordon, Rankin & Co. v. Tweedy.]

was considered in *Jackson v. Edwards* (7 Paige's Ch. Rep. 386), decided in 1839, by Chancellor Walworth. After observing that the annuity tables furnish the means of ascertaining "the probable value of the wife's contingent right of dower during the life of the husband," showing, as they do, not only the value of annuities which depend upon the continuance of single lives of different ages, but upon the continuance of two or more joint lives, the following rule is declared : "The proper rule," he adds, "for computing the present value of the wife's contingent right of dower, during the life of the husband, is to ascertain the present value of an annuity for her life, equal to the interest in the third of the proceeds of the estate to which her contingent right of dower attaches, and then to *deduct* from the present value of the annuity for her life, the value of a similar annuity depending upon the joint lives of herself and husband ; and the difference between these two sums will be the present value of her contingent right of dower."—7 Paige, 408, citing *McKean's Pr. L. Tables*, 23, § 4 ; Hendry's *Ann. Tables*, 87, Prob. 4.

At the time this rule was announced, more than forty years ago, the courts were accustomed to resort to the "Northampton" and the "Carlisle" Tables of observation, showing the probabilities of human life by actual observation in the towns of Northampton and Carlisle, England. These deaths, however, were not taken from selected lives, but from the population generally. The field was so circumscribed, that they have never been deemed entirely reliable. We judicially know that the business of life-insurance has made rapid advancement in modern times, especially within the past twenty years. New fields of observation have been explored, based upon the combined and actual experience of American life-insurance companies. This has led to the tabulation of results in what is now known as the "American Table of Mortality," which is now regarded as the orthodox standard throughout the United States and the Canadas. This table is based on the lives of insurable, or healthy persons, and is known to be now in use generally by modern life-insurance companies, for the arithmetical estimate of valuations. We are of opinion that, for these reasons, our courts should resort to the "American Table of Mortality" as a basis for the calculation of annuities dependent on the probabilities of human life in this country.

We see no reason why the chancellor, or register, should be precluded from taking judicial knowledge of both the existence of this Table and its contents. It is customary for courts to take judicial knowledge of what ought to be generally known within the limits of their jurisdiction. This cognizance may extend far beyond the actual knowledge, or even the memory

of judges, who may, therefore, resort to such documents of reference, or other authoritative sources of information as may be at hand, and may be deemed worthy of confidence. The rule has been held, in many instances, to embrace information derived informally by inquiry from experts.—1 Greenl. Ev. § 6 ; Gresley Ev. 295.

The register, in taking the account, will follow the rule above announced, having a proper regard to the value of the property, the health and age of the parties. The better practice would be, to examine a medical expert, with the view of ascertaining whether any change in the value of the dower should be reported, by reason of the failing or imperfect health of the parties at the time of the transaction.

6. No deduction should be allowed, on account of any statutory separate estate owned by Mrs. Tweedy. It is true that the statute provides, that the wife shall be excluded from her dower, if she own a statutory separate estate at the time of his death, greater in value than the dower interest, or that her dower shall be abated *pro tanto*, if her estate be less. Code, §§2715–16 ; *Williams v. Williams*, 68 Ala. 405. It can not be assumed, however, that she will continue to own in the future what she may own to-day. The tenure of property, as well as of life, is uncertain. The statute in question, moreover, is in derogation of the common law, which highly favored the wife's right of dower, classifying its protection with that of life and liberty. It must, for this reason, be strictly construed, and can have no operation except in the particular case designated, where the wife actually survives her husband, and an estimation is sought to be made of her perfect right of dower. It can have no application to the valuation of her inchoate right of dower.

We have examined the evidence, and decline to disturb the finding of the chancellor on the facts, or that of the register, except so far as his report is modified by the decree of the chancellor.

The decree is reversed, and the cause is remanded, that the issues relating to dower, taxes and improvements alone may be determined on a further reference to the register.