Anderson, Executor, v. Northrop—Syllabus.

ANDREW ANDERSON IN HIS OWN RIGHT AND AS EXECUTOR
OF THE LAST WILL AND TESTAMENT OF CLARISSA C. AN-
DERSON, DECEASED, APPELLANT, VS. HENRY P. NORTHROP
IN HIS OWN RIGHT AND AS EXECUTOR OF THE ESTATE OF
CLAUDIAN B. NORTHROP, SENIOR, DECEASED, AND AS EX-
ECUTOR OF THE ESTATE OF CLAUDIAN B. NORTHROP, JUN-
IOR, DECEASED, AND AS ADMINISTRATOR OF ANDREW NOR-
THROP, DECEASED, AND AS ADMINISTRATOR OF THE ESTATE
OF JOHN B. NORTHROP, DECEASED, AND EMILY C. NOR-
THROP, APPELLEES.

HENRY P. NORTHROP IN HIS OWN RIGHT AND AS EXECUTOR
OF THE ESTATE OF CLAUDIAN B. NORTHROP, SENIOR, DE-
CEASED, AND AS EXECUTOR OF THE ESTATE OF CLAUDIAN B.
NORTHROP, JUNIOR, DECEASED, AND AS ADMINISTRATOR OF
THE ESTATE OF ANDREW NORTHROP, DECEASED, AND AS
ADMINISTRATOR OF THE ESTATE OF JOHN B. NORTHROP,
DECEASED, AND EMILY C. NORTHROP, APPELLANTS, VS.
ANDREW ANDERSON IN HIS OWN RIGHT AND AS EXECUTOR
OF THE LAST WILL AND TESTAMENT OF CLARISSA C. AN-
DERSON, DECEASED, APPELLEE.

1. The former decision in this case (Anderson v. Northrop,
   30 Fla. 612), that interest was to be allowed upon the ac-
   counting for proceeds of land sold, and rents, incomes
   and profits of other lands, is conclusive upon that ques-
   tion, and cannot be reviewed or reversed upon this ap-
   peal.

2. When an executrix, who was also devisee for life of all
   the property devised by the will and entitled as such to
   the property and to its rents, incomes and profits during
   her life, converted part of the real estate into money, none
   of wihch came to the hands of her executor, but was

spent by her in her lifetime, the remainder-men are entitled to recover from her executor the principal sum with simple interest thereon without annual rests, from the date of the death of such executrix.

3. In stating an account with an executor or administrator of the claim of a creditor of the estate, the debt or sum claimed does not bear compound interest, nor is it stated with annual rests, unless by special agreement between the deceased and the creditor compound interest or annual rests was provided for; but in stating an account with an executor or administrator of the assets of the estate subject to the creditor's claim, or of the liability of the executor or administrator as such for the payment of such claim, interest with annual rests upon balances in his hands is allowed under the rule prevailing in this State. The proper application of this rule never increases the claim of the creditor, but merely increases the assets of the estate or the personal liability of the administrator or executor, as a source from which payment of the creditor's claim may be coerced.

4. Where parties claim, not as heirs of an executor's decedent, but by an independent right, to recover from the executor the rents, incomes and profits of real estate belonging to them, but of which the executor has had the possession and received the rents, incomes and profits, simple interest only is allowed, and the account will not be stated with compound interest, or interest with annual rests.

5. Where a party is required to account for the rents, incomes and profits of real property, and it is shown that a certain parcel was rented whenever opportunity offered for sums admitted to have been reasonable, that the party made diligent efforts to rent the property every year, and it was very generally known that the property was for rent, and it is not shown that during any year that the property was unrented it could have been rented, or that there was an opportunity to rent it, the party should be charged only with the amounts for which the property was actually rented, and nothing should be charged for

years not rented, even though the party did not advertise the property for rent in newspapers published near the vicinity of the property.

6. Where a party is required to account for the rents, incomes and profits of real estate upon which was located a bearing orange grove, and it was shown not to be customary to rent orange groves, and the party had in fact kept up and cultivated the grove and gathered and sold the oranges, it was proper to require him to account for the income from the grove by charging him with the proceeds of the oranges sold, and allowing him the reasonable and necessary expenses of cultivating and caring for the grove and selling the fruit.

7. Where a party is required to acccount for the rents, incomes and profits of real property for the period of time during which litigation was pending resulting in the decree for an accounting, and part of the property consisted of a parcel of low marshy land which could not have have been rented at any price, and the party allowed another to fill it in at considerable expense and improve and use it as an ornamental garden without other compensation for its use, he should not be charged anything for the rental value of such parcel where it is not shown that it could have been rented during any year, either before or after it was so filled in and improved.

8. Where pending litigation respecting the ownership of a parcel of land, after the Circuit Court has decreed that the complainants are co-owners with the defendant of such parcel and during the pendency of defendant's appeal from that decree, he improves the property by filling in a part of it which by reason of the filling in of adjoining property by the owners, is left without means of drainage, thereby adding materially to the desirability and value of the entire tract, but such improvement is made without the consent of the complainants, not in obedience to the lawful order of some body possessing authority to require the filling in of property which has become a menace to the public health, and where such improvement

has added nothing to the rental value of the balance of the property and has not caused the parcel improved to produce any rents, the value of such improvement can not be allowed in reduction of rents, incomes and profits for which he is required to account to complainants, nor as a claim against complainants; and this is true whether the defendant be regarded as a constructive trustee, tenant in common ousting his cotenants, or as a party who at the institution of the suit believed himself to be the sole owner of the property.

9. Compensation for individual services in managing or taking care of the joint property is never awarded to a cotenant except as the result of a direct agreement or unless from all the circumstances a mutual understanding to that effect is satisfactorily shown.

10. A party who holds the possession and management of property despite the wishes of others who claim to be co-owners claiming the entire ownership thereof, until declared by the courts to be a constructive trustee of the property for the benefit of such others, is not entitled to compensation for his care and management of the property when held to account for the rents, incomes and profits thereof.

11. Where real estate came to the hands of an executor which was not properly assets of the estate, but which was held by his testatrix as a constructive trustee for the executor as an individual and others and the executor received all of the rents, incomes and profits of the property accruing after the death of his testatrix, he is liable to a personal judgment in a suit by such others for their interest in the rents, incomes and profits so coming into his hands.

Appeal from the Circuit Court for St. Johns County.

The facts in the case are stated in the opinion of the Court.

*Cooper & Cooper,* for Andrew Anderson.

*F. P. Fleming,* for Henry P. Northrop *et al.*

Per Curiam.

This cause being reached in its regular order for final adjudication, was referred by the court to its commissioners for investigation, who report that the decrees appealed from ought to be reversed.

Upon a former appeal in this cause (Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318) it was decided, among other things, that the complanants and the defendants Crafts named in the bill of complaint were entitled to a decree for their respective shares and interests according to the provisions of the will of Andrew Anderson, Sr., in and to all of the real estate included in the deed from William A. Forward to Clarissa C. Anderson that was found in her possession and the title to which was standing in her name at the time of her decease, and in and to all of the lands mortgaged to her as executrix by Peter Sken Smith and which she bought at tax sale, the title to which remained in her at her decease; that defendant Andrew Anderson as her executor should account to them for their proportionate parts of the rents, incomes and profits of all such real estate as remained in her name from the date of her decease, with the legal accumulation of interest thereon since that date; that the cause should be referred to a master to ascertain and report what portions of said real estate that was conveyed to Clarissa C. Anderson by William A. Forward, and by said tax deed of the Peter Sken Smith lands, have been sold and conveyed by her to other parties and the prices

at which she sold the same, with interest thereon from
the date of her decease, and that defendant Andrew An-
derson as her executor should account to complainants
and the defendants Crafts for their respective shares and
proportionate parts thereof according to the provisions
of the will of Andrew Anderson, Sr.    The Circuit Court
in pursuance of the decision of this court referred the
cause to a master to take and state an account as indi-
cated in the opinion filed by this court, and the master
having heard the testimony produced by the parties, filed
his report in 1894. All parties having filed exceptions to
this report, the court referred the cause to the master a
second time requiring him to take and state the account
according to certain specific directions therein given. On
June 9, 1896, the master, after having taken more testi-
mony, filed his second report which was excepted to in
various particulars by the respective parties. The court
overruled all exceptions and on October 9, 1897, entered
a decree which, after reciting that it appeared by the
record that Andrew Anderson had acquired by convey-
ance and assignment to him all the interest of the defend-
ants Crafts and their trustee thereby concentrating in
him (including his own interest as a devisee) a five-eights
interest in the estate of Andrew Anderson, Sr., and that
complainants owned the remaining three-eights interest
in said estate, decreed to complainants $3,164.22 with in-
terest from June 9, 1896, against Andrew Anderson ex-
ecutor, to be made out of the goods  and  chattels  of
Clarissa C. Anderson, deceased, as their three-eigths in-
terest in the proceeds of the sales of the Forward and
Smith lands received by Clarissa C. Anderson in her
lifetime, with interest calculated thereon with annual
rests from the time of her death, and also decreed to com-

plaintants $12,214.72 with interest from June 9, 1896, against Andrew Anderson individually as their three-eights interest in the net rents, incomes and profits of the land known as the Markland cottage tract and Ponce de Leon gardens, with simple interest thereon. From this decree both parties have appealed, and have assigned as error divers matters relating to the second decree of reference and the final decree, and many errors alleged to have been committed by the master in his allowance and refusal to allow various items upon the accounting had before him embraced in exceptions to his report. We shall confine our decision to the matters insisted upon in the briefs and oral arguments.

I. It is insisted by defendant, first, that no interest should have been allowed either upon the sums received by Clarissa C. Anderson in her lifetime from sales of the Forward and Smith lands, or upon the rents, incomes and profits received by defendant from those portions of said lands remaining unsold at the time of her death; and second, that if interest is to be allowed at all it was error to compute it with annual rests upon the sums received by Clarissa C. Anderson from sales of lands. On the other hand, it is insisted by complainants that interest with annual rests was properly allowed upon the sums received by Clarissa C. Anderson from sales of lands, and should also have been allowed with annual rests upon the rents, incomes and profits received by defendant after her death. By the decision of this court upon the former appeal the defendant was decreed to account for the proceeds of the sales of land by Clarissa C. Anderson "with interest thereon from the date of her decease," and

for the rents, incomes and profits of all of such real estate as remained in her name from the date of her decease, "with the legal accumulation of interest thereon since that date." That decision is the law of the case, and is a conclusive answer to the contention that no interest should have been allowed. As that decision does not determine whether simple interest or interest with annual rests is to be allowed, we think that question is an open one and shall proceed to consider it.

Counsel for complainants insist that under section 1936 Rev. Stats. and various decisions of this court, beginning with Young v. McKinne, 5 Fla. 543, in stating an account against an administrator or executor annual rests are to be made and interest charged on the balance found due at the period of each rest, and that this rule is applicable to the present case, both as to sums received from sales of land and as to rents, incomes and profits. As will be seen from the former decision of this court, all of the property of Andrew Anderson, Senior, was devised to his wife Clarissa C. Anderson for life.    Even after the sale of the lands, for the proceeds of which her executor is required to account, she was entitled to the proceeds and the use thereof for her life, and she was under no duty as executrix to account for or pay any interest thereon for the benefit of her husband's estate or the complainants as his legatees. She was, therefore, not required during her executorship to account for such proceeds with annual rests, but only for the principal at the time of her death. It never became her duty to invest the money for the benefit of complainants, because it was only upon and after her death that complainants became entitled to the money or to have it invested for their benefit. Had the money remained on hand at the time of her

death, it would have been the duty of her executor to pay it over to complainants, but the fact is, the money never came to his hands and it, therefore, never became his duty to invest it, nor could any balance thereof remain in his hands annually which he could retain or invest so as to charge him with interest with annual rests. Having spent the money in her lifetime, the complainants upon her death became enttled to recover from Mrs. Anderson's estate the principal sum with simple interest from the date of her death, like any other creditor of her estate, and the rule invoked as to annual rests does not apply Neither do we think the rule applies to interest upon the rents, incomes and profits. In stating an account of the claim of a creditor of an estate, the debt or sum claimed does not bear compound interest, nor is it stated with annual rests. In stating an account with an executor or administrator, of the assets of the estate subject to the creditor's claim, or of the liability of the executor or administrator as such for the payment of the creditor's claim, interest with annual rests upon balances in his hands is allowed under the rule stated, but the proper application of the rule never increases the claim of the creditor, but merely increases the assets of the estate or the personal liability of the administrator or executor as a source from which payment of the creditor's claim may be coerced. The complainants do not stand in the relation of heirs of Mrs. Anderson seeking to compel the executor to account with them as such, in which event the account would be stated with annual rests, but rather as parties claiming, not as heirs of the deceased, but by an ndependent right to recover from the executor the rents, incomes and profits of real estate belonging to

them, but of which the executor has had the possession
and received the rents and profits.   To such a case the
statutory rule is not applicable, and simple interest only
is allowed.

II.    The report of the master and the decree of the
court held defendant accountable for rents, incomes and
profits from what is known as the Markland tract and
the Ponce de Leon gardens.    Upon the Markland tract
there were two cottages, one known as the Markland
cottage, the other as the Winslow or King street cot-
tage.    Upon the same tract was an orange grove which
for several years subsequent to the death of Mrs. Ander-
son was productive and the defendant cultivated and
kept up the grove and gathered and sold the fruit.    The
master, under the drection of the court, undertook to as-
certain the fair rental value of the Markland tract, in-
cluding the Ponce de Leon gardens, taking into consid-
eration in estimating same all the improvements existing
at the death of Mrs. Anderson, including the orange
grove while it continued productive, and also the cost
of preserving and keeping in proper condition the orange
grove, without, however, charging defendant with any
sums realized from sale of oranges.    The master found
such rental values to be as follows: For the Winslow cot-
tage, which seems to have been rented every year, actual
receipts for rent, for the Markland cottage which some
years was not rented, $700 per year for years not rented,
and from the best we can gather from the record the
same amount for years actually rented, and in addition
to the rental values of the two cottages he charged the
actual receipts for oranges, deducting the necessary ex-

31 S C

penses of caring for the grove and the expenses of gathering and selling them, and for the Ponce de Leon gardens $960 per year, with simple interest on these amounts from the beginning of the year next after they were or should have been received, after deducting taxes and the amounts necessarily required to repair and preserve the property. The Winslow cottage rented every year for sums varying from $285.85 to $775. The master accepted these sums as the fair rental value of that cottage, and the parties do not raise any question as to his finding in that behalf. The other items of rent are, however, contested, and we proceed to consider them in detail.

A. The Markland cottage rented irregularly for sums varying from $500 to $1,000 per annum. It appears from the testimony that defendant rented it whenever he could do so, and that he made diligent efforts to rent it all the time. It was desirably located, but inconveniently constructed and there was no demand for a house of that character for annual rental, but only by wealthy winter tourists who rented for only a few months in the winter season. This demand was not regular, but occasional, and the only neglect shown against defendant in relation to the rental of this cottage was his failure to advertice it in the newspapers. While this is a circumstance to be considered, it is shown that the fact was very generally known that the cottage was for rent, and that the defendant and his friends used every reasonable effort to rent it. No witness ventures the opinion that it could have been rented in any year that it was not rented, nor is it shown that there was an opportunity to rent, or that any person desired to rent it if it had been known the house was to rent in any year that it was not rented.

The finding of $700 per year rental value was not based upon evidence of a regular demand for the cottage at that or any other price annually, but upon the average price received for the years rented. The court is of opinion that the evidence fails to show that the Markland cottage possessed a rental value for the years not rented, and that nothing should, therefore, be charged defendant on account of rents for those years. Under the testimony the rental value of the Markland cottage for the period of time embraced in the accounting was the sums actually received and accounted for by the defendant, and he should be charged with nothing more.

B.  From the testimony it appears that it was not customary for bearing orange groves to be rented. The former decision required the defendant to account for the rents, incomes and profits of the lands. It appears from the testimony that the defendant cultivated and kept up the grove and gathered and sold the oranges. Under the decree to account for the incomes of the property, it was proper to require defendant to account for the proceeds of the oranges gathered and sold, allowing him the reasonable and necessary expenses of cultivating and caring for the grove and selling the oranges.   This was the basis upon which the master estimated the additional rental value of the Markland tract by reason of the presence of the grove thereon, and the result thus obtained is properly chargable to defendant as income from the orange grove situated upon the property.

C.  The Ponce de Leon gardens comprise nearly two acres of land lying immediately west of the Ponce de Leon hotel. Originally it was in large part low, marshy land. It is not pretended that it possessed a rental value prior to 1886, from which year the master bases his cal-

culation of rental value. About that time the Ponce de
Leon hotel was constructed, and by reason of the filling
in of lands about it in consequence of the building of the
hotel, this parcel was left lower than the surrounding
land, without means of drainage, in consequence of which
a pond of water would accumulate upon it. Defendant
then agreed with H. M. Flagler, the owner of the hotel,
that if he would fill in this parcel he might use it as an
ornamental garden for the hotel. This was done at an
expense of over $2,000 to Flagler, and he used the parcel
as an ornamental garden from thenceforth. There is tes-
timony tending to show that this parcel after it was
filled in and improved was worth from $15,00 to $100,000,
and several witnesses gave their opinion that its rental
value was the equivalent of a specified rate of interest
upon its value ranging from $900 up to $5,000, but no wit-
ness testified that any person ever desired to rent the
property at any price, or that it could have been rented
for any sum, during any portion of the time embraced in
the master's calculations of rental value. It had no build-
ings upon upon it—nothing but grass and shrubbery and
a fountain, all put there by Mr. Flagler during his use of
it. Several witnesses expressed the opinion that the
property might have been leased for several hundred dol-
lars ground rent per annum provided the lease could be
made for a period of not less than eight years, but it is
not shown that any person desired or offered to lease it
even upon these terms, and with litigation pending it is
not likely that any one would have been willing to take
a lease from defendant for a term of eight years, espec-
ially as the Circuit Court had prior to 1886 in this suit
decreed that complainants and the Crafts were co-owners

with defendant of the property. The testimony fails to show that the property could have been rented at any price, at any time, or that it possessed a real rental value that could have been realized by defendant. It shows that vacant, unimproved land, like this was before it was filled, possessed no rental value; that parties owning that class of land in the city in lots of similar size and character considered themselves lucky if they could give the use of it to some one who would care for it. In this case the defendant not only secured some one to care for this lot, but who actually filled it in and improved it at an expense of over two thousand dollars, all of which inured to the benefit of the property and to the permanent mutual advantage of its owners. Even after it was so improved it is not shown that it could have been rented for any sum annually, and it was error to decree an annual rental of $960, or any other sum, for this property. As the court holds that no rental value should have been charged upon this property, it is needless to determine whether the cost of filling in should be allowed as a credit to defendant, as he does not insist upon the credit except as a setoff against the rental value charged against him.

III. The court refused to allow the defendant a sum claimed as the cost of filling in the southwest corner of the Markland tract, and refused to allow him any sum for compensation and commissions for his personal services in the care, preservation and management of the orange grove and other property. In estimating the rental value of the cottages the court allowed him a reduction of $100 per annum on account of furniture owned by him and his mother's estate with which the Markland cottage was partly furnished, the cottages having been rented as furnished houses. The defendant con-

tends that he should have been allowed the cost of filling and the commissions and compensation claimed, and that the court should have allowed an amount exceeding $100 per annum for the use of furniture, while as to this item the complainants contend that the amount allowed for furniture was excessive.

A.    From the testimony it appears that the southwest corner of the Markland tract was naturally lower than the other portions of the tract; that by reason of the filling in of adjoining land by the owners this corner was left undrained, in consequence of which a stagnant pond of water would have formed thereon; that temporary conveniences for filling had been provided by an adjoining owner by means of which the low portion of the Markland tract could be filled    more cheaply at that time than at any other time in the future; that the filling in would add materially to the value and desirability of the remainder of the tract, and that the defendant procured it to be filled in at that time at a    cost of   more   than $1,500, which he paid.    The testimony shows    that the filling in was a very judicious act and added materially to the value and desirability of the entire tract, though there is no claim that the improvement added anything to the rental value of the cottages or the tract of land, nor that the failure to fill in would have    affected    the rental value.    Some of the witnesses express the opinion that the city authorities would, or probably would, have ordered the property filled in as being a menace to the public health, but this was merely the opinion of the witnesses, as no order to fill in was ever given by the town authorities.    This work was done without the consent of complainants being asked or given, while the present liti-

gation was pending and while the defendant's appeal from the decree of the Circuit Court adjudging complainants to be co-owners with defendant was pending in this court. Under these circumstances, whether the defendant be regarded as a constructive trustee or as a tenant in common, he can not be allowed the cost of the improvement so made by him. His powers as a mere constructive trustee would not authorize him to bind his *cestuis que trust* for the improvement made under the circumstances, even to the extent of an allowance in reduction of rents and profits. His position as a tenant in common ousting his co-tenants, or as a party believing himself to be the sole owner of the property, and improving it as such, would not authorize him to bind them for permanent improvements put upon the land without their consent, during the pendency of the litigation, and especially after the decree of the Circuit Court against him (Gordon, Rankin & Co. v. Tweedy, 74 Ala. 232; Austin v. Barratt, 44 Iowa 488; Mayer v. Haggerty, 138 Ind. 628, 38 N. E. Rep. 42), even to the extent of setting off the improvements against their claim for rents and profits. The item claimed as the cost of filling in the property was properly disallowed.

B.    In Fuller v. Fuller, 23 Fla. 236, 2 South. Rep. 426, it was held that compensation for individual services in managing or taking care of the joint property is never awarded to a co-tenant except as the result of a direct agreement, or unless from all the circumstances a mutual understanding to that effect is satisfactorily shown. Under this rule the defendant as a co-tenant can not be allowed compensation or commissions for his care and management of any of the property, for there was no agree-

ment express or implied between his co-tenants and himself that he was to be compensated. Nor can he be allowed compensation as a trustee, for he is merely a constructive one, has at all times prior to the former decision of this court denied the trust and assumed to retain possession and management of the property despite the wishes of the complainants. His services have thus been forced upon them by defendant without their consent, and equity does not under these circumstances require them to compensate him for his enforced services. Henderson v. Chaires, 35 Fla. 423, 17 South. Rep. 574. The items for commissions and compensation were properly disallowed.

C. It is a difficult matter to make an exact estimate as to the amount proper to be allowed for the use of furniture included in the rentals of the Markland cottage that belonged to the defendant or his mother's estate. The testimony upon that point is meagre and very indefinite. It is clear that the Markland cottage was partly furnished with this furniture, and that the cottage rented for much more furnished than it would unfurnished. It is clear also that defendant should be allowed something for the use of his furniture, and we think the sum allowed, $100 per annum, is as accurate as the nature of the testimony will admit of. This sum should, therefore, be deducted from the rents received from the Markland cottage, for each year that it was rented.

IV. It is further contended that it was error to enter a decree for rents, incomes and profits against Andrew Anderson as an individual, and that the decree should be against him as executor of Clarissa C. Anderson. The rents, incomes and profits came into his hands after the death of Mrs. Anderson, were not properly assets of her

estate, but the property of complainants and the other heirs of Andrew Anderson, Senior, and under these circumstances he should be held personally accountable and liable therefor.

V.   We have disposed of all the questions presented in the argument and briefs of counsel. The final decree is reversed and the cause remanded with directions to refer the cause to a master to take and state the accounts between the parties according to the following instructions:   He shall charge the defendant as executor with the sum of $2,660, the amount found by the master upon the former second reference and not questioned by any of the parties, for proceeds of sales of Forward and Smith lands received by Clarissa C. Anderson in her lifetime, calculating simple interest thereon from the date of the death of said Clarissa C. Anderson, to the date of his report. He shall charge the defendant individually each year since the death of Clarissa C. Anderson the amounts found by the master upon the former second reference to have been received by him for rent of the Winslow or King street cottage, the Markland cottage and from sales or oranges, wood, land, and rent from Weems lot, allowing as credits all sums allowed by the master on such former reference, for that year on account of taxes, repairs, expenses, labor, materials and improvements, and also for each year in which the Markland cottage was rented, the sum of $100 for furniture therein, disallowing all items which were disallowed by the master upon such former second reference, and calculating simple interest upon the annual balances so found to the date of making his report. In stating such account the master shall not charge defendant with any rent, or rental value of the Ponce de Leon gardens, nor

for any rent or rental value of the Markland cottage for any year that it was rented. He should disallow the defendant's claim for filling in the southwest corner of the Markland tract, and also for commissions and compensation for personal care and attention to the property, including the orange grove. Upon the coming in of the master's report the court shall proceed to enter a decree against the defendant as executor of Clarissa C. Anderson for the amount including interest found to be due to complainants for their share of proceeds of sales of the Forward and Smith lands received by Clarissa C. Anderson in her lifetime, to be levied of the property of said Clarissa C. Anderson that has or may come to the hands of the defendant, her executor, to be administered, and also a decree against the defendant individually for the sum including interest found to be due from him to complainants for their share of the rents, incomes and profits before stated, to be levied of his lands, tenements, goods and chattels. The complainants will be taxed with all the costs of both appeals.